# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00786-SCT

*DAVID EARL KING AND NATHAN PAUL KING*
*a/k/a DOOLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/2/2001 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GARY L. HONEA |
| | JOHN M. COLETTE |
| | WAYNE DOWDY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS |
| DISTRICT ATTORNEY: | JAMES DANIEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/18/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     David Earl King (King) and his adopted son, Nathan Paul King (Dooley), were convicted in the Circuit Court of Walthall County, Mississippi, Honorable Mike Smith, Circuit Judge, presiding, of the crimes of conspiracy to commit sexual battery, sexual battery, and contributing to the delinquency of a minor.  King was sentenced to serve consecutive, respective terms of five years, thirty years, and one year in the custody of the Department of Corrections (DOC), and to pay respective fines of $5,000.00, $10,000.00, and $1,000.

Dooley was sentenced to serve consecutive, respective terms of two and one-half years, fifteen years, and one year in the custody of the Department of Corrections, and to pay respective fines of $5,000.00, $10,000, and $1,000. Aggrieved by this judgment and sentence, King appeals, presenting the following issues, edited for clarity, for this Court's resolution:

I. **Whether the trial court erred in denying bail to King.**
II. **Whether the trial court erred with regard to discovery.**
III. **Whether the trial court erred in overruling the King's motion for severance.**
IV. **Whether pretrial and trial publicity denied the King a fair trial.**
V. **Whether the trial court erred in regard to the State's disclosure of the deal made with co-indictee Gary Bates.**
    (a) **Whether the trial court erred in refusing King's request for a cautionary instruction regarding Gary Bates's guilty plea.**
VI. **Whether the trial court erred in admitting certain pornographic evidence.**
VII. **Whether M.R.E. 404(b) was violated.**
VIII. **Whether the trial court erred in ordering that the venire list be sealed or by refusing King's request for individualized voir dire.**
IX. **Whether the trial court erred by overruling, in part, King's motion to suppress.**
X. **Whether the defendant's constitutional protection against double jeopardy was violated.**
XI. **Whether the trial court erred in submitting certain instructions to the jury.**
    (a) **Aiding and abetting instructions**
    (b) **Instruction 23**
    (c) **Instruction 25.1**
XII. **Whether the jury's verdict is against the overwhelming weight of the evidence, contrary to the law of this State, and the result of bias and prejudice.**
XIII. **Whether the trial court erred in sentencing King.**
XIV. **Whether cumulative error requires reversal.**

Dooley also appeals, presenting the following edited issues:

I. **Whether the trial court erred by admitting rebuttal testimony of the State's rebuttal witness, H. G., a minor, in violation of MRE 404 (b).**

2

II. **Whether the trial court erred in failing to instruct the jury regarding MRE 404 (b) evidence.**

III. **Whether the trial court erred by allowing the jail nurse, a State's witness, to testify regarding an alleged relationship between the defendants, Nathan Paul King and David Earl King, in violation of MRE 404 (b).**

IV. **Whether the trial court erred in sealing the jury panel list in this action from Dooley.**

V. **Whether the trial court erred in granting the State's jury instruction No. 21 because the instruction misstated the law of aiding and abetting.**

## FACTS AND PROCEDURAL HISTORY

¶2.    King is the founder and patriarch of the Valley of the Kings, an independent, non-denominational "holiness" church in rural Walthall County. Dooley is his adopted son. A.B.[1], a minor, and his family, were members of King's congregation. The church was located on 58 acres that also included the King residence and out-buildings where A.B.'s family lived for a period of time.

¶3.    In the late evening of March 1, 2001, King and Dooley were arrested by Walthall County law enforcement officers (LEO) at their homes inside the Valley of the Kings complex on a variety of sexual assault charges arising from their alleged homosexual misconduct with A.B. A third co-defendant, Gary Bates (Bates), a vagrant, was arrested sometime later. Upon searching King's house, and particularly King's bedroom, officers found much homosexual pornographic material, as well as sexual lotions and devices, all as described by A.B.

¶4.    An initial preliminary hearing was held on March 5, 2001, before the Honorable Marion McKenzie, Justice Court Judge. Bond was denied, and King filed for a petition for a writ of

---

[1]    We use the fictitious initials of A.B. for the minor whom King and Dooley were convicted of molesting. It is improper to use the full name of a minor.

3

habeas corpus. A hearing was held before the Honorable Mike Smith, Circuit Court Judge, on March 6, 2001, in Walthall County. Judge Smith also denied King's requested bond. King then filed an Emergency Motion for Bail to this Court, which was denied by Justice Easley on May 18, 2001.

¶5. King, Dooley, and Bates were indicted by the Walthall County Grand Jury in a multi-count indictment. King and Dooley were charged with conspiracy to commit sexual battery, sexual battery, and contributing to the delinquency of a minor. Bates pled guilty and testified for the State in exchange for a lesser sentence.

¶6. King filed a series of pretrial motions, including one for a change of venue which was granted. The trial began on August 27, 2001, in Franklin County, and continued for three days. The evidence produced at trial established that King, Dooley, and Bates had, on numerous occasions, fondled and engaged in oral and anal sex with A.B. At the conclusion of the trial, the jury found King guilty on all three counts. Sentencing commenced immediately, and King received a total term of thirty-six years in the custody of the DOC and a total fine of $16,000, together with all costs of court. Dooley was also found guilty and sentenced. Bates, in exchange for his cooperation with the State, pled guilty to a sole count of conspiracy and received a probated sentence.

¶7. King timely filed a motion for JNOV, or in the alternative, for a new trial, on September 6, 2001. Dooley filed his on September 7, 2001. King alleged eighteen separate areas of error, as did Dooley. After a hearing, their motions were denied. The trial court issued an amended sentencing order on October 2, 2001. King and Dooley timely perfected their appeals to this Court.

4

## ANALYSIS

## ISSUES RAISED BY KING

### I.      WHETHER THE TRIAL COURT ERRED IN DENYING BAIL TO KING.

¶8.     In his first issue, King complains of the trial court's refusal to release him on pretrial bail.[2]  This refusal, he contends, "was just the first step" in his being denied "either a fair prosecution or a fair trial."  The State disputes that King was denied a fair trial, then argues that the refusal of bail is of no moment to King's appeal.  This Court agrees.  *See **Jones v. State***, 798 So. 2d 1241, 1255 (Miss. 2001); ***King v. State***, 580 So. 2d 1182, 1185-86 (Miss. 1991) ("[W]hether the judge improperly incarcerated James has nothing to do with the merits of this case and, as a consequence, reversal is not a possible remedy."); ***Benson v. State***, 551 So. 2d 188, 195 (Miss. 1989) ("The trial court's denial of bail is not grounds for reversal of the judgment rendered against the defendant.").

¶9.     This assignment is without merit.

### II.      WHETHER THE TRIAL COURT ERRED WITH REGARD TO DISCOVERY.

¶10.    Here, King contends that the State "failed to establish complete disclosure" and that the "prejudice to [him] was immense as even at trial new material was being used" and that "[t]oo many critical items just 'slipped through the cracks.'"  He complains that the "trial court's order on this issue was a mere excuse" and "[t]he trial court's decision ... after trial was mere justification."

---

[2]Bail was originally denied by the justice court judge, and ultimately, by this Court.

¶11.    Beyond citing a few general principles related to discovery requirements, the foregoing is the substance of King's argument in this assignment of error.  He does not cite to any specific evidence the State failed to disclose nor does he pinpoint any specific ruling of the trial judge denying him disclosure of requested evidence in the State's possession.  Indeed, in ruling on this issue as raised by King in his motion for a new trial, the trial judge stated as follows:

2.      To the Court's knowledge, the State produced all documents, etc. requested by the defendants. There has been no complaint to the Court of any specific document, etc. that was not produced.
3.      The Court is unaware of anything that the State did not disclose.  There has been no complaint to the Court of any specific matter that was not disclosed.

¶12.    The trial court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will not be set aside in the absence of an abuse of that discretion.  ***Gray v. State***, 799 So. 2d 53, 60 (Miss. 2001). Judgments of the trial courts come to this Court clothed with a presumption of correctness, and it is the burden of the appellant--King–to overcome that presumption.  ***Branch v. State***, 347 So. 2d 957, 958 (Miss. 1977).  "Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." ***Acker v. State***, 797 So. 2d 966, 972 (Miss. 2001) (quoting ***Lambert v. State***, 574 So. 2d 573, 577 (Miss. 1990)).  *See also* ***Pulphus v. State***, 782 So. 2d 1220, 1224 (Miss. 2001) ("Issues cannot be decided based on assertions from the briefs alone.  The issues must be supported and proved by the record.") (citing ***Robinson v. State***, 662 So. 2d 1100, 1104 (Miss. 1995)).

6

¶13.    Mere assertions that a discovery violation occurred, without proof, or any meaningful argument whatsoever as to what particular evidence was not disclosed, is insufficient to warrant reversal.  King has failed to meet his burden of proof; no abuse of discretion has been demonstrated.

¶14.    Next, King argues that he was not given exculpatory evidence.  He argues that it was discovered after the subsequent civil case was dismissed against him that there was no hard medical or psychological inculpatory evidence against him.  Apparently, he is arguing that he should have been told that fact and the failure to so inform him was a discovery violation.

¶15.    Initially, King's argument relies on matters outside of the record and is thus improper for our consideration.  *See*, *e.g., Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983) ("Facts asserted to exist must and ought to be definitively proved and placed before us by a record, certified by law; otherwise, we cannot know them.").  Additionally, as the State points out, King fails to assert any error by the trial judge.  Since King never gave the judge an opportunity to rule on this issue, our review of it has been foreclosed.  *See Leverett v. State*, 197 So. 2d 889, 890 (Miss. 1967) ("The Supreme Court is a court of appeals, it has no original jurisdiction, it can only try questions that have been tried and passed upon by the court from which the appeal is taken.").  If King was dissatisfied with the State's disclosure of exculpatory materials, he was under a duty to bring that fact to the attention of the trial judge.  The failure to do so amounts to a waiver of the issue.

¶16.    King's argument, procedural bars notwithstanding, is as hard to follow as it is without merit.  He concludes that this is a "pure-form *Brady* question."  In *Brady v. Maryland*, 373 U.S. 83, 83, S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court of the United States held

7

that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87, 83 S. Ct. at 1196-97. However, in the case at bar, King has failed to reveal what exculpatory evidence the State had, but refused to disclose. There is simply no ***Brady*** question–pure-form or otherwise–in this case. King states that the case against him was "just talk, innuendo and speculation...." That, however, is, a more apt description of the argument made by King on this issue.

¶17.    King argues that because the State did not call either Lisa B. Yazdani, the psychologist, or Lacey O'Quinn, the DHS social worker (both of whom interviewed A.B.) their testimony would not have inculpated him; therefore their testimony would have exculpated him. This argument is nonsensical. As the State points out, these two reports, which were disclosed to King, were not exculpatory, but were inculpatory. Since King cites to no evidence that was withheld from him, and since he does not attempt to demonstrate the exculpatory nature of this allegedly withheld evidence, this assignment is without merit.

### III.    WHETHER THE TRIAL COURT ERRED IN OVERRULING KING'S MOTION FOR SEVERANCE.

¶18.    Here, King complains that the trial court erred in overruling his motion to sever his trial from that of Dooley. King also argues that the trial court erred in failing to instruct the jury to consider the case of each defendant separately and individually.

¶19.    Regarding severance of trials, URCCC 9.03 states as follows:

> The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge.

The court may, on motion of the state or defendant, grant a severance of offenses whenever:

1.    If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

2.    If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

URCCC 9.03. The court's refusal of a severance will not be overturned absent "showing of an abuse of discretion." *Minor v. State*, 482 So. 2d 1107, 1109 (Miss. 1986); *Hicks v. State*, 419 So. 2d 215, 216 (Miss. 1982). When the evidence at trial goes equally to the guilt of both defendants, and not to one more than the other, it is not error to try the defendants jointly. *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987).

¶20.    Therefore, to warrant reversal on these grounds, King must demonstrate that (1) Dooley attempted to exculpate himself at the expense of King, i.e., there was a conflict of interest between the two; and (2) that the balance of the evidence introduced at trial went more to the guilt of Dooley than to the guilt of King, such that the jury may have found King guilty by association. *Duckworth v. State*, 477 So. 2d 935, 937 (Miss. 1985). King has failed to make that showing.

¶21.    King argues there is "no question the focus of this entire action was King himself." (emphasis in original). He cites *Walker v. State*, 729 So. 2d 197 (Miss. 1998), where this Court found that severance is necessary when the balance of evidence introduced at trial tends to go more to the guilt of one defendant than the other. King argues this is particularly true when the disparity of evidence introduced against one defendant would tend to inculpate a co-defendant by association. *See Swanagan v. State*, 759 So. 2d 442, 445 (Miss. Ct. App. 2000).

¶22. Though it would seem obvious that these principles are meant to protect the co-defendant against whom the State has less evidence, that point is apparently lost on King, who argues that the vast weight of the evidence was aimed at him, and not at Dooley. Since "the balance of the evidence introduced at trial tend[ed] to go more to the guilt of one defendant [meaning King] rather than the other [meaning Dooley]," King concludes that the court erred in denying his motion to sever. Beyond this misguided argument, King makes no further attempt to demonstrate prejudice.

¶23. King's argument on this point fails because it misapplies controlling precedent. Since the bulk of the evidence was aimed at King, there is no way that he was prejudiced by being tried jointly with Dooley, and no way that the jury found him guilty by association. This argument might be applicable to Dooley,[3] but not King. Therefore, in the case at bar, like in **Duckworth**, there is no showing of prejudice, and accordingly, "no grounds to hold that the trial court abused its discretion" in overruling King's motion for severance. *See* **Caston v. State**, 823 So. 2d 473, 487-88 (Miss. 2002) (Co-defendants did not seek to exculpate themselves at defendant' expense).

¶24. Finally, King argues that the trial court erred in failing to instruct the jury that it was to consider the case of each defendant separately and individually. Initially, it is noted that King

---

[3]Though he does not specifically address this argument, Dooley does, pursuant to M.R.A.P 28 (i), adopt King's brief. Thus, technically, he has raised this issue. However, because he offers no argument, and because King's argument of this issue makes no mention of Dooley, in this Court's view, Dooley has waived this possible error for failure to make meaningful argument in support of his issues. *Pate v. State*, 419 So.2d 1324, 1325-26 (Miss. 1982) (Supporting the argument of his issues with reasons and authorities is part of an appellant's burden on appeal and the failure to do so constitutes a waiver of those issues).

failed to request such an instruction. A trial court has no duty to give unrequested instructions. Therefore, this contention is procedurally barred. *Giles v. State*, 650 So. 2d 846, 853-54 (Miss. 1995) (no error where no instruction requested); *Buggs v. State*, 754 So. 2d 569 (Miss. Ct. App. 2000) (No request for limiting instruction to instruct jurors as to what evidence could be considered against each defendant for the numerous crimes charged in the multi-count indictment; therefore, there is no error.).

¶25.    Moreover, beyond arguing that the failure to instruct the jury on this point was error, King offers no argument in support of his position. He merely cites *United States v. Buckhalter*, 986 F.2d 875 (5th Cir. 1993), and asserts that prejudice attached to both Dooley and him, thus, he claims, reversal is proper. The failure of King to properly brief this issue obviates the necessity of our review. *See Pulphus v. State*, 782 So. 2d at 1224 ("Issues cannot be decided based on assertions from the briefs alone. The issues must be supported and proved by the record.") (citing *Robinson*, 662 So. 2d at 1104).

¶26.    Procedural bars notwithstanding, this issue is without merit. *Buckhalter* does not stand for the proposition that a trial judge is required to instruct the jury to consider the guilt of each defendant separately. Rather, in that case, the court merely commented on the fact that the trial judge followed that procedure. *Buckhalter*, 986 F.2d at 877. Moreover, in the present case, individual jury instructions were given for each defendant on each separate count, save the conspiracy count, which by necessity required the mention of all the alleged participants in the conspiracy.

¶27.    This assignment is without merit.

### IV. WHETHER PRETRIAL AND TRIAL PUBLICITY DENIED KING A FAIR TRIAL.

¶28. King argues that he was denied a fair trial because of the extensive media coverage. However, due to the pretrial publicity in Walthall County, the State did not oppose and the trial judge granted King's motion for a change of venue from Walthall to Franklin County. Although King cites the failure to grant another change of venue, he has not cited to any further request for a change of venue, and this Court has found none. We can only consider questions that have been tried and passed upon by the court from which the appeal is taken. *Leverett v. State*, 197 So. 2d at 890. *Accord*, *Patterson v. State*, 594 So. 2d 606, 609 (Miss. 1992). The trial judge cannot be held in error for failing to rule on a motion that was never brought to his attention. Thus, this issue is procedurally barred.

¶29. Moreover, the State submits that this issue is procedurally barred because King has again failed to assert any error committed by the trial judge. Indeed, King admits that "procedurally the Circuit Judge did all that was required." However, he concludes that, in the end, "it came up short." Because King has failed to allege any error by the trial court, and because he has admitted that the trial court did all that was required, this issue has been specifically waived.

¶30. Alternatively, the issue is without merit. A change of venue requires that a defendant be tried in an atmosphere in which public opinion is not saturated by bias, passion or prejudice against him. *Seals v. State*, 208 Miss. 236, 44 So. 2d 61, 67 (1950). King argues that everyone in Southwest Mississippi had heard about the case. Indeed, King asserts that 30 of the 73 potential venire had shown knowledge of the case. However, the record reveals that only

two had made up their minds and stated that they could not fairly try the case, and they were both stricken for cause.

¶31.    In *Gray v. State*, 728 So.2d 36, 66-67 (Miss. 1998), this Court affirmed a finding that the jury was impartial because "the panel members were asked repeatedly by the trial judge, the State's attorneys, and Gray's attorneys if they could be fair and impartial[, and there was] nothing in the record to indicate that the jurors were not fair and impartial." When King raised this issue in his post-trial motion, the trial court denied it, stating the following:

> The defendants received a fair and impartial trial. There was newspaper publicity of the case in every county in the State of Mississippi because the Jackson Clarion Ledger newspapers are circulated in every county. There was absolutely no pretrial publicity, however, in the Franklin County Advocate, the only newspaper published in Franklin County, Mississippi. The Court questioned the jury every day as to any newspaper that they may have seen or television news report that they might have heard and each time, each member of the jury advised the Court every day that there had been absolutely no contact by anyone regarding the trial and that no one had tried to get around them and discuss the trial. There was no trial publicity during the pendency of the action that was received by any member of the jury.

Thus, the record supports the conclusion that the trial judge did everything requested of him to prevent outside influences on the jury. Indeed, as King points out in his brief, the trial judge "took the exceptional step of sealing numerous hearing and closing the court file." And again, as King argues in his brief, "procedurally the Circuit Judge did all that was required." He certainly did all that was requested.

¶32.    Beyond speculation and unsupported assertions, King has presented no concrete evidence establishing that adverse public opinion was prejudicial to his case. A reviewing court does not act upon innuendo and unsupported representation of fact, *Gerrard v. State*, 619 So.2d 212, 219 (Miss. 1993), or upon assertions in briefs, but is bound by the matters

13

contained in the official record. *Saucier v. State*, 328 So.2d 355, 357 (Miss. 1976). King's failure to timely bring his concerns to the attention of the trial judge, and his failure to include evidence of the prejudice he now claims, constitute a waiver of this issue.

¶33.    This assignment is without merit.

> **V.      WHETHER THE TRIAL COURT WAS IN ERROR IN NOT COMPELLING THE COMPLETE, PRETRIAL DISCLOSURE OF THE AGREEMENT OF THE STATE WITH ITS WITNESS, GARY BATES.**

¶34.    Next, King claims that the State should have been required to disclose the details of its deal with co-defendant Gary Bates. He cites *Sayles v. State*, 552 So. 2d 1383 (Miss. 1989), for the proposition that lack of complete knowledge of one's accusers limits a defendant. While this is a correct statement of the law, it does not specifically hold nor does it imply that every detail of a plea bargain must be turned over to the defendant.

¶35.    Moreover, King admits that the State provided him with Bates's statement prior to trial and that it informed him that it was discussing possible probation for Bates for his testimony. Indeed, the record makes clear that King knew that Bates had made a deal with the State and that King was allowed to impeach Bates's testimony with this information.

¶36.    In his opening statement, Dooley's counsel[4] stated, in part, as follows:

> And the evidence is going to show that Gary Bates has worked a deal. And we will explore with Gary Bates what his deal is after he gets up on the witness stand and admits that he had horrible, despicable homosexual relationships with [A.B.].

---

[4]Although this statement was made by Dooley's counsel rather than King's, King was also privy to this information as evidenced by King's questioning of the State's witnesses.

14

King specifically questioned the victim's mother about the deal, asking her, "Do you know that he's got - - he's got a plea with the District Attorney where he gets probation; did you know that?" He also questioned Bates himself about the deal, in an effort to attack Bates's credibility. Also, in the argument of a later issue in his brief, King concedes that he "also had some notice that the State had promised Bates a probated sentence in return for his testimony." Finally, in the trial court's denial of King's and Dooley's motions for a new trial, the trial judge stated, "[t]he District Attorney's plea bargain recommendation form was available to the defendants and had they requested same, it would have been provided to them. Had they requested it and it had not been provided, the Court would have compelled disclosure." Thus, it is obvious to this Court that King did in fact have knowledge of the deal given to Bates in exchange for his testimony and that he was allowed to impeach Bates's testimony with this information.

¶37.    King also asserts that it is especially true that a defendant is limited by a lack of complete knowledge of one's accusers when the jury is not adequately instructed on such testimony. For this proposition, King cites *Moore v. State*, 787 So. 2d 1282 (Miss. 2001). However, he makes no argument in support of this assertion, nor does he explain how *Moore* is applicable to his case. This cursory argument is insufficient to overcome the presumption of correctness which attends the judgment of the trial court. *Branch v. State*, 347 So. 2d at 958. Moreover, *Moore* is distinguishable from the case at bar because in that case, the defendant requested a cautionary instruction, while King did not. King's failure to request a cautionary instruction constitutes a waiver of this issue.

**(a)** **Whether the trial court erred in refusing King's request for a cautionary instruction regarding Gary Bates's guilty plea**

¶38.     King specifically raises the lack of a limiting instruction regarding Bates's testimony in a later assignment.  For clarity, that issue is discussed here.  King complains that the trial court committed reversible error in failing to instruct the jury, upon his request, "to not consider the guilty plea of Gary Bates in consideration of the guilt or innocence" of King.  However, as mentioned, King did not formally request that the trial court give such an instruction to the jury.  He did orally request such an instruction during Bates's testimony, however, the trial judge suggested that they wait until all the instructions were given prior to the jury beginning its deliberations.  The record does not indicate that King ever requested such an instruction again.

¶39.     Bates pled guilty to the charges against him, agreed to testify against King and Dooley, and consequently received a significantly lower sentence than did King and Dooley.  The trial court granted a general cautionary instruction regarding the credibility of witnesses; however, the instruction did not instruct the jury regarding Bates's testimony in particular.  Because of the facts surrounding Bates's testimony listed above, we conclude that the general cautionary instruction was insufficient to inform the jury of the caution with which Bates's testimony should be viewed.  *See **Moore v. State***, 787 So. 2d at 1287-88 (holding that the failure to give a requested cautionary instruction regarding informant's testimony constituted reversible error in a capital murder prosecution, given the unreliability of jailhouse informants and the fact that the general instruction regarding witness testimony did not advise the jury to weigh informant's testimony with caution and suspicion).

¶40.    However, King is procedurally barred from asserting the absence of an individualized instruction as to Bates's testimony as error. *Cummins v. State*, 515 So. 2d 869, 872 (Miss. 1987) (no error where no request for accomplice cautionary instruction); *Kelly v. State*, 778 So. 2d 149, 152-53 (Miss. Ct. App. 2002). Although it is true, as King argues, that we have held that the ultimate responsibility for the jury to be properly instructed rests with the trial court, *Duvall v. State*, 634 So. 2d 524, 526 (Miss. 1994), we have also held that "[a] trial judge will not be put in error on a matter which was not presented to him for his decision." *Parker v. Miss. Game & Fish Comm'n*, 555 So.2d 725, 730 (Miss. 1989).

¶41.    The trial judge may instruct the jury upon applicable principles of law (1) at the request of a party, as provided by Miss. Code Ann. § 99-17-35 (Rev.1994), or (2) on the court's own motion as specified in URCCC 3.07. *See Newell v. State*, 308 So.2d 71, 78 (Miss. 1975). The trial court has no affirmative duty to offer jury instructions sua sponte or to suggest instructions for the parties to consider. *Giles v. State*, 650 So.2d at 854. Even though this instruction should have been granted, the trial court's failure to give it was never brought to its attention. This Court should not be the first tribunal that considers the oversight.

¶42.    Moreover, King has failed to demonstrate how the absence of this instruction caused him prejudice. It is the duty of the appellant, not only to demonstrate error in the introduction of the evidence, but also to show the prejudice to the defense that arose from that erroneous ruling. *See McGowan v. State*, 706 So.2d 231, 243 (Miss. 1997); *Flowers v. State*, 726 So.2d 185, 189 (¶ 17) (Miss. Ct. App. 1998). Irrespective of Bates's testimony, substantial evidence

established that King committed these crimes. Thus, this Court concludes that the error in failing to so instruct the jury, if it can in fact be credited to the trial court, was harmless.

¶43. This assignment is without merit.

## VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING CERTAIN PORNOGRAPHIC EVIDENCE.

¶44. Next, King asserts error in what he characterizes as the "blanket admission of any evidence deemed pornographic irrespective of the origin, substance, date, or relevance of the suspect evidence to the alleged crimes." King complains that irrelevant pornography was erroneously admitted, some of which was over ten years old and only one photograph of which could be characterized as child pornography. He submits that the only reason for the introduction of this evidence was to unfairly prejudice him in violation of M.R.E 403.

¶45. Fifteen boxes of property were seized from the King residence. In an effort to sort through this mass of material, the trial court held what King describes as "an extensive hearing on these materials the State chose to submit, on a box-by-box basis." At this hearing, the trial judge stated, "If it was found in his bedroom and it's pornographic, I think it's gonna be admissible." King complains that this "wide-open field" was too broad. However, King's characterization of the judge's ruling as a "blanket admission" is inaccurate. The record (and even King's brief) supports the conclusion that the trial judge individually viewed the multitude of evidence and ruled on the admissibility of each piece of potential evidence.

¶46. King also argues that, while perhaps distasteful, "the mere possession of certain suspect materials is not illegal." He cites various authorities for the proposition that pornography is protected by the First Amendment, and that, although obscene pornography is not, no

18

determination of the obscene nature of this pornography was made by the trial judge. King submits that the trial judge failed to conduct the appropriate examination to determine whether the evidence was obscene.

¶47.    King's constitutional argument misses the point. The pornography was admissible in toto due to the nature of the charges against King, one of which was contributing to the delinquency of a minor. Had King been on trial for possession of child pornography, a determination of the obscene nature of the pornography seized might well have been necessary. However, these charges were not brought against him.

¶48.    A.B. testified that King showed him pornography inside his locked bedroom. The fact that large amounts of pornography was in fact found inside King's bedroom is a relevant issue to the charge of contributing to the delinquency of A.B. because it makes A.B.'s accusations more probable than they would have been without the evidence. *See* M.R.E. 401 ("'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

¶49.    Of course, even relevant evidence may be inadmissible if it fails the balancing test of M.R.E. 403. However, this evidence was not substantially outweighed by the danger of unfair prejudice. Had the evidence consisted of child pornography, then Rule 403 might have warranted its exclusion; however, the bulk of the evidence admitted was garden variety homosexual material. Thus, there was no danger that the jury would convict King for molesting A.B. based solely on his possession of child pornography.

19

¶50.    Finally, King does not cite to any specific piece of pornography that was admitted erroneously.  He has failed to point out any of the State's exhibits which the trial court incorrectly labeled pornographic.  Accordingly, he has waived this issue.

¶51.    This assignment is without merit.

### VII.    WHETHER M.R.E. 404(B) WAS VIOLATED.

¶52.    In this issue, King complains that, "the State, in its disclosure and introduction of evidence under MRE, Rule 404 (b), did not comply with the orders of the trial court, nor did this evidence pass the filter of MRE, Rule 403."  Though he does not specifically assert any error on the part of the trial court, this Court assumes that King intended to argue that the trial court erred in its rulings on the objections made by King to certain testimony referred to only by page number in King's brief.  However, after reviewing the witnesses' testimony to which King objected, we conclude that no reversible error occurred.

¶53.    First, King objected during the testimony of Adra Gibson, Dooley's biological mother. Gibson had been asked about her relationship with Dooley.  She testified:

> One time, when he left from the house, he came up there to the trailer to visit with us, and not long after that, Brother King came up there on the outside and shot a gun, and -

King objected to testimony regarding King shooting a gun.  The objection was sustained, and the jurors were instructed to disregard the statement.  They all indicated that they would.

¶54.    Glen King (Glen), King's son, was asked, on direct examination by the State, where Gary Bates slept at the King residence.  King objected to this testimony.  Because Glen could not answer the question from personal knowledge, the objection was sustained, and Glen was not allowed to answer the question.

20

¶55.    Glen was also asked about a conversation he had with A.B. regarding King.  King

objected on hearsay grounds, but the objection was overruled based upon the tender years

hearsay exception, which states as follows:

> The following are not excluded by the hearsay rule, even though the declarant is
> available as a witness:
>
> (25)    A statement made by a child of tender years describing any act of sexual
>         contact performed with or on the child by another is admissible in
>         evidence if: (a) the court finds, in a hearing conducted outside the
>         presence of the jury, that the time, content, and circumstances of the
>         statement provide substantial indicia of reliability; and (b) the child
>         either (1) testifies at the proceedings; or (2) is unavailable as a witness:
>         provided, that when the child is unavailable as a witness, such statement
>         may be admitted only if there is corroborative evidence of the act.

M.R.E. 803(25).  The trial judge had previously heard argument, outside the presence of the

jury, on the reliability of A.B.'s statements (which described sexual contact with King), and

A.B. had previously testified regarding the statement.  Though perhaps cumulative, allowing

Glen to testify to this statement was not erroneous, especially since Glen had solicited the

statement from A.B., and since defense attorneys had attacked A.B.'s credibility.  *See* M.R.E.

801(d)(1)(B) ("A statement is not hearsay if: The declarant testifies at the trial or hearing and

is subject to cross-examination concerning the statement, and the statement is . . . (B)

consistent with his testimony and is offered to rebut an express or implied charge against him

of recent fabrication or improper influences or motive....").

¶56.    King also objected to Glen's testimony as follows: "He's told me about some other

things, rumors that he has heard in the community, that were not related to this particular

conversation." In response, the court warned Glen not to testify to any rumors about any other victim.[5]

¶57. Finally, King objected to the testimony of Melody Stewart. Stewart was a nurse at the jail where King and Dooley were housed prior to trial. She testified that she observed Dooley and King lying on their sides, together in the bottom bunk. King was facing the wall, and Dooley was facing King. When Stewart entered the cell, Dooley jumped up immediately, but King initially refused to get up, falsely claiming that another nurse had already come by. After fumbling with his crotch area, King finally did arise, and Stewart testified that he had a noticeable erection.

¶58. King complains that the trial court committed reversible error by allowing Melody Stewart to testify not once, but twice, first in the State's case-in-chief, and second in rebuttal to Dooley's testimony. However, the record reveals that Stewart testified only once before the jury, and this was in rebuttal to Dooley's testimony. Though she was called during the State's case-in-chief, her only testimony at that time occurred outside the presence of the jury, and King's objection thereto was sustained by the trial court.

¶59. King complains that Stewart's testimony failed the balancing test of M.R.E. 403 because it was not related in any way to the charged crimes and because King never put his character in issue by testifying, either directly, or through other witnesses.

¶60. Though character evidence is not permissible to show conformity therewith on the occasion of the alleged crimes, M.R.E. 404(b), it is, as King freely admits, admissible as

---

[5]Glen also testified that his father threatened A.B.'s family through him and that his father instructed him to say in court that A.B. was always trying to perform oral sex on Glen.

rebuttal evidence to explain, repel, counteract or disprove evidence of the adverse party. *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989). Dooley testified that he had never engaged in any kind of homosexual conduct with King. Therefore, evidence that he and King engaged in homosexual activities while incarcerated was admissible to impeach his testimony. Though it is arguable that the probative value of this evidence was outweighed by its prejudicial effect, this Court is of the opinion that the probative value of this testimony was not substantially outweighed by the dangers espoused in M.R.E. 403, especially considering that Dooley opened the door to this testimony through his denial.

¶61. Generally, evidence of a crime other than that charged in an indictment is not admissible against the accused. *Townsend v. State*, 681 So.2d 497, 506 (Miss. 1996). However, "[a]dmission of evidence and testimony about evidence is within the broad discretion of the trial court, requiring a reversal only on a demonstrable abuse of that discretion." *Id.* at 507. King has failed to demonstrate an abuse of discretion.

¶62. Moreover, the jury was specifically instructed that it could consider Stewart's testimony "for the limited purpose of determining the truth and veracity of the defendant's, Nathan Paul King, testimony." The trial court further instructed the jury: "you are not permitted and hereby instructed not to consider any testimony regarding and testimony of H.G. and Melody Stewart in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty of the charges" for which they were on trial. This instruction cured any possible prejudice that could have occurred. *See Day v. State*, 589 So.2d 637, 644 (Miss. 1991). The jury is presumed to follow the instructions of the trial court. *Davis v. State,* 660 So.2d 1228, 1253 (Miss. 1995); *Walker v. State,* 671 So.2d 581, 618 (Miss. 1995); *Collins*

*v. State,* 594 So.2d 29, 35 (Miss. 1992). King has not attempted to show any evidence that the jury failed to follow the trial court's limiting instructions, thus, the presumption that it did must prevail.

¶63. In short, it appears that King got everything he asked from the trial court. All the objections to the testimony of these witnesses cited as error by King were sustained by the judge and cautionary instructions were given where necessary and/or requested.

¶64. This issue is without merit.

### VIII. WHETHER THE TRIAL COURT ERRED IN ORDERING THAT THE VENIRE LIST BE SEALED OR BY REFUSING KING'S REQUEST FOR INDIVIDUALIZED VOIR DIRE.

¶65. Here, King complains that the trial court erred in sealing the names of the potential venire and by denying individual voir dire. Citing Miss. Code Ann. § 13-5-32 (Rev. 2000), as amended, King contends that, "[b]y going outside the statute, error was committed."

¶66. The standard of review in examining the conduct of voir dire is abuse of discretion. *Jackson v. State*, 791 So.2d 830, 835 (Miss. 2001). An appellant must show actual harm or prejudice before this Court will reverse a trial court's limitation on voir dire. *Stevens v. State*, 806 So.2d 1031, 1054 (Miss. 2001). A trial court's finding that an impartial jury was impaneled will not be reversed unless the court abused its discretion. *Holland v. State*, 705 So.2d 307, 336 (Miss. 1997).

¶67. Regarding this issue, Miss. Code Ann. § 13-5-32 states as follows:

> The names of jurors drawn from the jury box shall be made available to the public unless the court determines in any instance that this information in the interest of justice should be kept confidential or its use limited in whole or in part.

24

In *Valentine v. State*, 396 So. 2d 15, 17 (Miss. 1981), this Court expanded the requirements of § 13-5-32 by holding that, before sealing a venire list, the trial court must give notice and a hearing to the defendant. *Valentine*, 396 So. 2d at 17. Those guidelines were not followed in the case at bar. Instead, during a pretrial hearing, the trial court announced that it intended to seal the venire list because, "I don't want any improper contact with any proposed juror from anybody."

¶68. Interestingly, the Court in *Valentine* did not reverse based on the trial court's error in sealing the venire list. Indeed, King has not cited to any case in which the appellate courts of this State have ever reversed a criminal case on these grounds. He does, however, state the following: "in not following the specific provisions of the statute, the trial judge was in error. *United States v. Clay*, 159 F. Supp. 2d 1357 (M.D. Ala. 2001)."

¶69. In *Clay,* the federal court granted a new trial because the jury selection plan for criminal cases violated the Jury Selection and Service Act (JSSA).[6] In that case, the court administrator almost always granted temporary deferrals to potential jurors and then, upon expiration of the deferrals, constructed the venire lists in such a way as to prefer the previously deferred jurors over those who were drawn directly from the qualified wheel. The court held that this procedure substantially violated the JSSA provision requiring random selection of names from the district's qualified wheels and that the practice allowed a disproportionate number of white jurors and created the potential for racial discrimination.

---

[6] 28 U.S.C. §§ 1863(a), 1863(b)(5).

¶70. *Clay* is distinguishable from the case at bar. First, this case deals with State, not federal law. Also, the trial judge's actions here created no potential for race discrimination, a substantial factor in *Clay*. *Clay* provides no support for King's position. The failure to cite relevant authority, or to make any connection between the authority cited and his case constitutes a procedural bar. *Pace v. State*, 419 So. 2d at 1325-26.

¶71. Also fatal to this assignment, however, is King's failure to demonstrate, or even argue, that he was prejudiced by the trial court's failure to follow this procedure. Indeed, he states, "[King] does not complain of the Jury's conduct and deliberations here." This statement constitutes a waiver of this issue. *Branch v. State*, 347 So. 2d at 958 (holding that judgments of the lower court come to this Court clothed with a presumption of correctness, and it is the burden of the appellant to overcome that presumption).

¶72. Further, this Court has held that where the defendant has "alleged no prejudice as a result of the trial court's noncompliance with [a] statute and . . . has altogether failed to demonstrate that the jury was not chosen from a fair cross-section of the community," it will not reverse a criminal conviction. *De La Beckwith v. State*, 707 So. 2d 547, 598 (Miss. 1997). *See also* *Adams v. State*, 537 So. 2d 891, 894 (Miss. 1989) ("To be sure, one may find among our recent cases continued general observation that our jury selection laws are directory and not mandatory.")

¶73. King also asserts that the trial court committed error in refusing his request for individualized voir dire. He cites *Carr v. State*, 655 So. 2d 824 (Miss. 1995), and argues that the remedy found in *Carr*, the juror questionnaire and individual voir dire, was also denied.

26

However, as King readily admits, it is well-established this rests in the sound discretion of the trial judge, and is rarely afforded. ***Ballenger v. State***, 667 So. 2d 1242, 1250 (Miss. 1995).

¶74. The manner in which voir dire in criminal cases will be conducted is governed by URCCC 3.05 which provides in pertinent part:

> In the voir dire examination of jurors, the attorney will question to the entire venire only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked.

This Court has held that this rule's similar predecessor allows a circuit court, in its own discretion, to utilize individualized, sequestered voir dire. ***Russell v. State***, 607 So.2d 1107, 1110 (Miss. 1992); ***Hansen v. State***, 592 So.2d 114, 126 (Miss. 1991). However, this Court has further held that the predecessor rule did not require more than what it states on its face. ***Russell***, 607 So.2d at 1110; ***Hansen***, 592 So.2d at 126; ***White v. State***, 532 So.2d 1207, 1218 (Miss. 1988); ***West v. State***, 463 So.2d 1048, 1054 (Miss. 1985). We conclude that the trial court in the case sub judice did not abuse its discretion under Rule 3.05.

¶75. Beyond asserting that the pretrial publicity and its effect on prospective jurors, King does nothing to demonstrate an abuse of discretion. He makes no argument regarding the prejudicial effect of not being allowed to individually voir dire the venire, nor does he provide the Court with any evidence supporting his brief assertions regarding the effect of the alleged publicity on the prospective jurors. Without the inclusion of this information in the record before us, we cannot know it.

¶76. This assignment is without merit.

27

## IX. WHETHER THE TRIAL COURT ERRED BY OVERRULING, IN PART, KING'S MOTION TO SUPPRESS.

¶77. Here, King argues that the trial court erred in "denying the defendant's motion to suppress certain evidence seized after illegal search and seizure." However, King does not bother to enlighten us as to what "certain evidence" the trial court should have suppressed. The appellant, King, bears the burden of showing some reversible error by the trial court. The failure to do so constitutes a waiver. *Branch v. State*, 347 So. 2d at 958.

¶78. Procedural bar notwithstanding, King argues that, although the initial search warrant was proper, the officers exceeded the scope of that warrant by searching areas and seizing items not specifically included on the warrant. He cites various cases and laws forbidding such a general search. At trial, King unsuccessfully sought to suppress the second search warrant. He argues here that "[t]his continued rummaging by the State should have been suppressed." *See **United States v. Runyan***, 275 F.3d 449 (5th Cir. 2001).

¶79. King also argues that "even the State admitted that nothing was added to the underlying facts and circumstances for the second alleged search warrant." However, contrary to King's assertions, the record shows that the second search warrant was undergirded by information additional to that upon which the first warrant was based. The trial court made a specific finding of this fact in its ruling.

¶80. This assignment is without merit.

## X. WHETHER THE DEFENDANT'S CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY WAS VIOLATED.

¶81.   Dooley testified on his own behalf, and as a result of his testimony, the State called

H.G.[7] to testify in rebuttal.  At trial, King, through counsel, acknowledged, "I don't believe

[H.G.]'s testimony would have anything to do with my client."  However, here on appeal, King

complains that, since H.G. is the victim in the severed count of his and Dooley's indictment,

allowing H.G.'s testimony in this case gave the State a "double 'bite at the apple,'" allowing the

State a dry run at trying Dooley in the H.G. case. Since H.G.'s charge was against Dooley only,

as acknowledged by King at trial, King has no stake in this issue, and no standing to complain.

¶82.   King also argues, without clear explanation, that the double jeopardy clause is somehow

implicated.  It is obvious to this Court that the prohibition against double jeopardy was not

violated in this case.

¶83.   This assignment is without merit.

## XI.   WHETHER THE TRIAL COURT ERRED IN SUBMITTING CERTAIN INSTRUCTIONS TO THE JURY.

¶84.   Next, King argues that the trial judge erroneously submitted three instructions to the

jury.  However, as the State correctly points out, King failed to object to the granting of these

instructions.[8]  By failing to object to these instructions at trial, King waived this issue on

appeal. *See, e.g.*, *Cross v. State*, 759 So. 2d 354, 357 (Miss. 1999); *Moawad v. State*, 531 So.

2d 632, 635 (Miss. 1988); *Cole v. State*, 525 So. 2d 365, 374 (Miss. 1987).

---

[7] We use the fictitious initials H.G. for the minor whose alleged sexual abuse at the hands of Dooley formed the basis of Count four of the indictment against Dooley.

[8] Dooley did object to the granting of instructions 20 and 21.  However, King did not.  As King's counsel said at trial (regarding another subject), "[b]ut there ain't no they here, Judge.  We are tried together but we have separate clients to represent."

¶85. King argues that these issues are preserved for appeal under *Jackson v. State*, 672 So.2d 468, as corrected 684 So.2d 1213 (Miss. 1996), and *Duplantis v. State*, 708 So.2d 1327 (Miss. 1998). He offers no specific page citation for this proposition, and after a thorough review of these cases, this Court understands why. Neither *Jackson* nor *Duplantis* holds that a contemporaneous objection is not required.[9] Nor do they provide any other reason to find that this issue is not barred. Thus, the procedural bar remains in effect.

¶86. Alternatively, the issue is without merit. "In determining whether error lies in the granting or refusal of various instructions, the instructions given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So.2d 777, 782 (Miss. 1997).

### (a) Aiding and abetting instructions

¶87. First, King complains that submission of the aiding and abetting instructions "is but another example of the overkill mentality in this trial." King claims the instructions were an

---

[9] In fact, *Jackson* held seven of the assigned errors were procedurally barred for the defendant's failure to object at trial. However, *Jackson* did note that no contemporaneous objection is necessary to preserve plain error, such as the prosecutor's comment on the defendant's failure to testify, a situation not present in the case at bar. *Jackson* also commented on the failure of the defendant to provide a complete record of the instruction conference for the Court to review. This is perhaps the reason King cites it. However, in *Jackson*, the record was supplemented by the State, and, after noting that the defendant had failed in his burden to provide this Court with a complete record to review, this Court held that the defendant's failure to supplement the record obviated the necessity of review of the issue. *Jackson*, 684 So.2d at 1226.

    *Duplantis* held two of the assigned errors procedurally barred for the defendant's failure to object at trial. *Duplantis* did restate the well-recognized rule of law that the refusal of an instruction is procedurally preserved for our review by the mere tendering of the instruction and an objection to its refusal is not necessary. *Duplantis*, 708 So.2d 1339-40. However, as King is objecting on appeal to the granting of the State's instructions rather than the refusal of his own, *Duplantis* is not on point and offers him no support.

incomplete statement of the law which gave undue prominence to aiding and abetting on the part of King. He urges the Court to remember that he was not charged with aiding and abetting, but with a direct conspiracy count. King argues that "[a]iding and abetting may be part of a conspiracy, but the outline of same in State's Instruction 21 fell far short of what is required for conviction." *See Vaughn v. State*, 712 So.2d 721 (Miss. 1998).

¶88. As long as the instructions given properly instruct the jury of the elements of the crime and are correct statements of law, then no reversal will be granted. *Malone v. State*, 486 So.2d 360, 365 (Miss. 1986).

¶89. Instruction 20 states as follows:

> The Court instructs the Jury that every person who assists, aids or abets in the commission of a crime is equally as guilty as those who actually commit the crime. However, the Court further instructs you that before you can find a person guilty of aiding and abetting in the commission of a crime, you must find from the credible evidence, beyond a reasonable doubt, that such person or persons arranged for, counseled or commanded another to commit the crime of sexual battery. Mere presence by a person or persons at the scene of a crime or mere association with those who commit a crime is not enough to prove participation in it.

Instruction 21 states as follows:

> The Court instructs the Jury that aiding and abetting involves some participation in the criminal act and this may be evidenced by word, overt act or deed.

¶90. What renders one an "aider and abetter" is well settled. In *Crawford v. State*, 133 Miss. 147, 97 So. 534 (1923), this Court ruled that to aid and abet in the commission of a felony, one must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." *Id*. at 151. *See Malone v. State*, 486 So. 2d at 363 (To "aid and abet" means that one must "do something that will incite, encourage, or assist the perpetrator

31

in the commission of a crime."); *Williams v. State*, 463 So.2d 1064, 1066 (Miss. 1985) ("One who aids and abets another is an accessory before the fact and is guilty as a principal"); *Shedd v. State*, 228 Miss. 381, 386, 87 So.2d 898, 900 (1956) (Aiding and abetting involves a community of unlawful purposes at the time of the act and some participation in the act in furtherance thereof); *Gibbs v. State*, 223 Miss. 1, 6, 77 So.2d 705, 707 (1955) (Aiding and abetting involves participation in the criminal act).

¶91.     One who aids and abets necessarily enters into an agreement that an unlawful act will be done.  He participates in the design of the felony.  So when considered in this manner, the instruction properly advised the jury under the facts that, if it believed that Dooley and King formed a common design and purpose to sexually assault A.B., and that in pursuance of that common design Dooley did in fact so assault A.B., then King is guilty as charged.

¶92.     The instructions, when considered in conjunction with all others, had no tendency to mislead or confuse the jury or to impermissibly assign undue prominence to King's aiding and abetting or to lower the State's burden of proof.  These instructions, rather, properly stated the law of aiding and abetting.  Moreover, they were adequately supported by the evidence presented at trial.

¶93.     This assignment is without merit.

      **(b)      Instruction No. 23**

¶94.     Although he acknowledges that he failed to object to this instruction at trial, King argues this question is subject to plain error review. *See United States v. Myers*, 198 F.3d 160 (5th Cir. 1999); *Riggs v. State*, 744 So.2d 365 (Miss. Ct. App. 1999).  He makes this submission for two reasons: (1) King did not testify at this trial, and (2) in the case of both

32

rebuttal witnesses, their testimony was basically about unrelated, uncharged acts that had no bearing at all on what was before the trial court at this time.

¶95. The cases cited by King offer him no support. Neither case holds that the reasons cited by King are sufficient for reversal based upon plain error. Although they both outline what is required for reversal on those grounds, they also both clearly state that a crucial requirement is that the defendant must demonstrate prejudice. King's cursory argument fails in that regard.

¶96. King argued at trial for a limiting instruction regarding the testimony of H.G. and Stewart. However, now, on appeal, he claims that Instruction Number 23's only purpose was to highlight–not limit–said testimony. The fact that King requested this instruction operates to waive any objections to it here. Moreover, although King claims that, while Instruction Number 23 may have been limiting to Dooley, it was not limiting to him, the plain wording of the instruction belies his contention. The instruction states as follows:

> The Court instructs the Jury that the testimony of [H.G.] and Melody Stewart was offered for the limited purpose of determining the truth and veracity of the defendant's, Nathan Paul King, testimony. You may give this testimony such weight and credibility as you deem proper under the circumstances for the limited purpose of determining the truth and veracity, Nathan Paul King.
>    However, the Court further instructs the Jury that under laws of the State of Mississippi, you are not permitted and hereby instructed not to consider any testimony regarding and testimony of [H.G.] and Melody Stewart in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty of the charges of conspiracy to commit sexual battery, sexual battery (two counts) and contributing to the delinquency of a minor, said to have occurred on or before the 1st day of March, 2001, for which they are presently on trial.

The instruction tells the jury (1) that the only purpose of the testimony of H.G. and Stewart was to aid in determining the "truth and veracity" of Dooley's testimony; and (2) that the jury was

33

prohibited from using the H.G. and Stewart testimony "in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty" of the charged crimes.

¶97. Clearly, the instruction appropriately limited the jury's use of the testimony of H.G. and Stewart to its proper and only purpose. The jury is presumed to follow the instructions of the trial court, *Davis v. State*, 660 So.2d at 1253; *Walker v. State*, 671 So.2d 581, 618 (Miss. 1995); *Collins v. State*, 594 So.2d 29, 35 (Miss. 1992), and, King has failed to overcome the presumption.

¶98. This assignment is without merit.

### (c) Instruction No. 25.1

¶99. King contends that this instruction is a "restatement and extension" of Instruction Number 24, which he labels "the conspiracy elements instruction." The result, he contends, was that the jury would presume that, if the defendants conspired together to commit sexual battery, they must also have committed the sexual battery. He also comes to the nonsensical conclusion that "it is reversible" when the jury "is given a literal roadmap to conviction through instructions."[10]

¶100. Instruction Number 25.1 states as follows:

> The Court instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt, that on or before the 1st day of March, 2001, in Walthall County, Mississippi, the defendants, David Earl King and Nathan Paul King, also known as "Dooley", males over the age of eighteen years, did wilfully, unlawfully, feloniously and knowingly commit the crime of sexual battery, then you should find the said David Earl King and Nathan Paul King, also

---

[10]Had the jury not been given that "roadmap", King would certainly be arguing that the instructions were inadequate. Of course the instructions gave the jury a roadmap to conviction, that is their purpose; however, they also gave the jury the choice of whether to follow that map.

known as "Dooley", guilty of the crime of conspiracy to commit sexual battery as to count one; further, if you believe from the evidence in this case beyond a reasonable doubt that on or before the 1st day of March, 2001, in Walthall County, Mississippi, the said David Earl King and Nathan Paul King, also known as "Dooley", did wilfully, unlawfully and feloniously engage in sexual penetration of [A.B.], said act having occurred at a time when the said [A.B.] was a child under the age of sixteen (16) years and at a time when the said defendants were at least thirty-six (36) or more months older than the said [A.B.], then you should find the said David Earl King and Nathan Paul King, also known as "Dooley", guilty of sexual battery as to count two; further, if you believe from the evidence in this case beyond a reasonable doubt that on or before the 1st day of March, 2001, in Walthall County, Mississippi, the said David Earl King and Nathan Paul King, also known as "Dooley", did wilfully, unlawfully, feloniously and intentionally commit acts which contributed to or tended to contribute to the neglect or delinquency of [A.B.], a child under the age of eighteen (18) years, by wilfully, unlawfully, feloniously and intentionally providing the said [A.B.] with sexual aids and literature, showing the said [A.B.] pornographic materials and by engaging in sodomy in the presence of said [A.B.] then you should find the said David Earl King and Nathan Paul King, also known as "Dooley", guilty of contributing to the delinquency of a minor as to count three.

This instruction properly states the elements of each of the three crimes with which King was charged. It is not a "restatement and extension" of Instruction Number 24, which explains in detail more the law of conspiracy.[11] Neither Instruction Number 25.1 nor Instruction Number

[11]      The court instructs the Jury that the defendants, David Earl King and Nathan Paul King, also known as "Dooley", have been charged with the offense of conspiracy for having voluntarily entered into a scheme or agreement between themselves and one or more other persons to commit certain crime, namely, sexual battery.

A conspiracy is an agreement or understanding between two or more persons to violate the law. The agreement to violate the law need not be formal or express, but may be inferred from the circumstances, particularly by statements, acts and conduct of the alleged conspirators. The State is not required to prove that the conspirators entered into a solemn oral or written compact setting forth the existence and details of the conspiracy. It is sufficient to show the existence of the conspiracy if the State proves, beyond a reasonable doubt, that two or more persons, including David Earl King and Nathan Paul King, also known as "Dooley", in any manner or through any express or inferred contrivance, knowingly came to a common understanding to violate the law as set forth herein.

Thus, if you believe from the evidence in this case, beyond a reasonable doubt,

24, read individually or together, supports King's contention that the jury was led to presume that it must convict of sexual battery if it found that the defendants conspired to commit sexual battery.

¶101. Moreover, King has failed to carry his burden of proof. He argues that Instruction Number 25.1 is "[i]naccurate, confusing or misleading," but he does not demonstrate in what way. *Pate v. State*, 419 So. 2d at 1325-26 (Appellants must support the argument of issues with reasons and authorities); *Branch v. State*, 347 So. 2d at 958 ("There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court."); *Johnson v. State*, 154 Miss. 512, 513, 122 So. 529, 529 (1929) ("It is the duty of counsel to make more than an assertion; they should state reasons for their propositions, and cite authorities in their support . .. .").

¶102. This assignment is without merit.

### XII. WHETHER THE JURY'S VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, CONTRARY TO THE LAW OF THIS STATE, AND THE RESULT OF BIAS AND PREJUDICE.

¶103. The jury convicted King on all three charged counts. In this issue, King alleges that the jury's verdicts are "against the overwhelming weight of the evidence," and that they are "the result of bias and passion . . . ." Without providing any evidence to support this assertion, King

---

that on or before the 1st day of March, 2001, in Walthall County, Mississippi, an express or inferred agreement existed among David Earl King, Nathan Paul King, also known as "Dooley", and any other person or persons to commit the crime of sexual battery, it is your sworn duty to find the said David Earl King and Nathan Paul King, also known as "Dooley", guilty of conspiracy to commit the crime of sexual battery.

submits that the verdicts are not credible and that the jury had its collective mind made up prior to entering deliberations. He argues that improper evidence was brought before the jury, which he claims was essentially uninstructed.

¶104. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:

> [This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.

*Todd v. State*, 806 So.2d 1086, 1090 (¶ 11) (Miss. 2001). There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court. *Branch v. State*, 347 So.2d at 958. Supporting the argument of his issues with reasons and authorities is part of an appellant's burden on appeal. *Pate v. State*, 419 So. 2d at 1325-26. King's failure to make any pertinent and meaningful argument constitutes a waiver of this issue.

¶105. Alternatively, this issue is without merit. As even a casual reading of the facts and the evidence presented against King will demonstrate, the jury's verdict of guilty on all counts finds more than sufficient support in the evidence. This evidence, taken together with other reasonable inferences flowing therefrom, establishes that the evidence against King was overwhelming. Accordingly, this issue is without merit.

### XIII. WHETHER THE TRIAL COURT ERRED IN SENTENCING KING.

¶106. King was sentenced to five years and a $5,000 fine on the conspiracy count; thirty years and a $10,000 fine on the sexual battery count; and one year and a $1,000 fine on the contributing to the delinquency of a minor charge. These sentences represent the maximum sentences for each crime, and the trial court ordered that the prison time be served consecutively. King, 67 years old, complains that this is, in effect, a life sentence. He contends that his sentences are "unduly harsh and grossly disproportionate to the crimes charged . . . ."

¶107. This Court has repeatedly held that the imposition of a sentence, if it is within the limits prescribed by statute, is a matter left to the sound discretion of the trial court, and that the appellate courts will not ordinarily disturb a sentence so imposed. *Bell v. State*, 797 So. 2d 945, 950-51 (Miss. 2001); *Stromas v. State*, 618 So. 2d 116, 122 (Miss. 1993); *Reed v. State*, 536 So. 2d 1336, 1339 (Miss. 1988); *Boyington v. State*, 389 So. 2d 485, 491 (Miss. 1980). In *Bell*, this Court stated, in pertinent part, as follows:

> It is the prerogative of the Legislature to determine the appropriate sentence for crimes, and we do not consider the statutory punishment of thirty years for the crime of sexual battery to be excessive, especially when the victim is a child of tender years. Child molestation has become rampant in our society, and due to the nature of the offense, the emotional (and sometimes physical) harm to the child victim is irreparable.

797 So. 2d at 950-51.

¶108. King also argues in this issue, and repeatedly throughout his brief, that it was unfair for Gary Bates to receive a lesser sentence. He argues that although Bates made "the only admission of sexual battery" in this case, "the trial court chose to let Bates go relatively free, and King will die in prison." This recurrent argument overlooks the fact that, unlike either

38

King or Dooley, Bates confessed to his crimes, pled guilty, and testified for the State. A reduced sentence was therefore proper for Bates.

¶109. Moreover, the evidence showed without dispute, save the biased testimony of Dooley, that King was the instigator and orchestrator of all of the crimes involved in this case. The State argues that, "[g]iven the detestable nature of the crimes involved herein, the statutory maximum was–if anything–to lenient for King." It goes on to quote *Matthew* 18: 2-7, which states:

> And whoever welcomes a little child like this in my name welcomes me. But if anyone causes one of these little ones who believe in me to sin, it would be better for him to have a large millstone hung around his neck and to be drowned in the depths of the sea. Woe to the world because of the things that cause people to sin! Such things must come, but woe to the man through whom they come!

This authority, while worthy of the highest personal attention, is not a proper source of consideration for this Court, for "we do not judge men; that is for the Highest Court. We pass upon facts as measured by the law, and must at all times retain our equilibrium, to see that the shields erected after centuries of experience to prevent miscarriages of justice are maintained." ***King v. Kelly*** 243 Miss. 160, 175, 137 So.2d 808, 814 (1962).

¶110. Nothing in the record or presented by King warrants reversal or reduction of his sentence. It is within the statutory limits, and it is a just punishment for the despicable crimes for which he was found guilty by a fair and impartial jury.

¶111. This assignment is without merit.

## XIV. WHETHER CUMULATIVE ERROR REQUIRES REVERSAL.

¶112.  In his final assignment of error, King argues that the cumulative effect of the errors in his trial warrant reversal.  This Court will review "whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial." *Wilburn v. State*, 608 So.2d 702, 705 (Miss. 1992).  We have held that individual errors, not reversible in themselves, may combine with other errors to make up reversible error.  *Hansen v. State*, 592 So.2d at 142; *Griffin v. State*, 557 So.2d 542, 553 (Miss. 1990).  The question is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial.  *McFee v. State*, 511 So.2d 130, 136 (Miss. 1987).

¶113.  King addresses three general areas which he believes "created an inescapable atmosphere" of his guilt.   First, King offers vague and unsupported allegations that the State was after his money.  He claims that a large portion of money seized from him has never been accounted for.  King fails to allege any error by the trial court, and he does not offer any credible evidence that this money was in fact seized or that it has not been accounted for.  This argument does not form the basis for reversal of King's conviction.

¶114.  Next, King claims that the rules of evidence were forgotten during the testimony of A.B.'s mother, Adra Gibson, Glen King, Melody Stewart, and H.G.  However, King fails to specify what portions of these witnesses' testimony was wrongfully admitted or what rulings of the trial judge were erroneous.  Thus, he has failed to carry his burden of showing some reversible error to this Court.  *Branch v. State*, 347 So.2d at 958.  Moreover, after reviewing the testimony of these witnesses, this Court has found no error committed by the trial judge.

¶115. Finally, King contends that the trial court's gag order was violated, as "emphasized by a television interview of State's witness, Glen King and King's relative, by WDAM television of Hattiesburg during the trial." Initially, as the State points out, this complaint, true or not, is not a ground for reversal of King's judgments of conviction and sentence. Additionally, the trial court was careful to inquire of the jurors regarding any possible taint by the news media.

¶116. None of the issues raised by King, in this assignment or any of those discussed previously, rise to the level of reversible error either standing alone or when considered together. The evidence supported the finding that King was the ringleader of this abominable enterprise, and the jury made that finding. Its verdict finds substantial support in the evidence and King has failed to demonstrate any procedural or substantive errors that warrant reversal. Thus, his convictions and sentences are affirmed.

## ISSUES RAISED BY NATHAN PAUL KING

¶117. Nathan Paul King (Dooley) was indicted on four counts, which include: Count 1, conspiracy to commit sexual battery in violation of Miss. Code Ann. §§ 97-1-1 and 97-3-95 (d); Count 2, sexual battery, in violation of Miss. Code Ann. § 97-3-95 (d); Count 3, contributing to the delinquency of a minor, in violation of Miss. Code Ann. § 97-5-39 (1); and Count 4, sexual battery. Counts 1-3 related to A.B., the minor child who King was convicted of molesting. Count 4 related to H.G. and was severed from this trial and reserved for later prosecution.

¶118. Dooley and King were tried together, and their appeals have been consolidated. Dooley was sentenced to a total term of eighteen and one-half years and received a total fine of

41

$16,000.00, together with all costs of court. Aggrieved by this sentence, Dooley appeals, raising five issues for the Court's consideration:

## I. WHETHER THE TRIAL COURT ERRED BY ADMITTING REBUTTAL TESTIMONY OF THE STATE'S REBUTTAL WITNESS, H.G., A MINOR, IN VIOLATION OF MRE 404 (B).

¶119. Dooley testified on his own behalf during the trial. During his direct examination, his attorney asked specifically if he had ever had any type of sexual contact with A.B., Gary Bates, or King. Dooley denied ever having any such relations.

¶120. On cross-examination, Dooley was asked whether he had ever engaged in any homosexual activity with any other people. He denied that he had. He was also asked if he knew who H.G. was. Dooley responded: "If I seen him, I wouldn't know him. But I just understand he's some connection with [A.B.'s] family, is all I know. I don't know how he's kin or anything."

¶121. Over Dooley's objection, the State was allowed to call H.G. as a rebuttal witness. H.G. testified that, inter alia, Dooley tried to molest him by "sticking his penis in [H.G.'s] rectum." Dooley argues that allowing this testimony of alleged improper sexual conduct between Dooley and H.G., a minor, which conduct was unrelated to the crimes for which he was on trial constitutes reversible error.

¶122. Evidence of uncharged misconduct or other offenses is inadmissible where the only purpose for the evidence is to raise the "forbidden inferential sequence," i.e., to suggest that because the defendant engaged in other misconduct or committed another offense, he probably committed the offense for which he is then on trial. *See, e.g.*, **Lancaster v. State**, 472 So. 2d 363, 368 (Miss. 1986); **Blanks v. State**, 547 So. 2d 29, 37 (Miss. 1989).

¶123. In *Mitchell v. State*, 539 So.2d 1366 (Miss. 1989), this Court rejected the argument that evidence of a defendant's prior sexual misbehavior with other children is admissible during the State's case-in-chief to show "the system of criminal action and lustful disposition of [the defendant] toward children." *Mitchell*, 539 So.2d at 1372. This Court held that to allow "testimony that shows a defendant's character of lustful behavior toward children in general, not just [toward the victim at issue]," would "not be consistent with the purpose of M.R.E. 404(b)." *Id.* This Court concluded that under Rule 404(b) "evidence of other sexual relations [should be limited] to those between the defendant and the particular victim [at issue]." *Id.* This Court explained that to admit evidence of prior bad acts involving victims other than the one for whom the defendant was on trial would be "[i]nconsistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person." *Id.* Accordingly, *Mitchell* requires an identity of victims in sexual abuse cases, i.e., the prior bad act sought to be admitted must have been committed upon the same victim that the defendant is currently on trial for having allegedly harmed. Consequently, if the evidence of prior bad acts concerns acts committed upon victims other than the one involved in the instant case, the prior bad acts evidence is inadmissible on direct under our rules of evidence. *See Elmore v. State*, 510 So.2d 127, 131 (Miss. 1987) (holding that "the admission of evidence of remote instances of sexual misconduct with someone other than the prosecutrix was reversible error").

¶124. In *Nicholson v. State*, 704 So. 2d 81 (Miss. 1997), Nicholson was accused of sexual battery. The State was allowed to question Nicholson during cross-examination regarding fondling allegations involving another girl. Nicholson denied these allegations, and the State

introduced the evidence through a rebuttal witness. This Court held that the State could not introduce inadmissible evidence through rebuttal witnesses, when the rebuttal was first set up by cross-examination of defense witnesses. *Nicholson*, 704 So. 2d at 82.

¶125. Here, the State asked on cross-examination whether Dooley ever had any homosexual activity with any other people. Dooley denied any activity. Dooley was also asked if he knew H.G. He stated that "If I seen him, I wouldn't know him. But I just understand he's some connection with [A.B.'s] family, is all I know. I don't know how he's kin or anything." Clearly, Dooley knew H.G. as Dooley was also indicted for sexual battery of H.G. albeit that count was severed from the trial involving A.B. H.G. was called as a rebuttal witness and testified that Dooley tried to molest him.

¶126. Based upon *Baine v. State*, 604 So.2d 258 (Miss. 1992), this evidence was admissible because it was somewhat related in time and character to the crime for which Dooley was on trial. In *Baine*, the defendant was indicted under § 97-5-23 for sexually molesting three children who attended his wife's day care center. *Baine*, 604 So.2d at 259. The charges were severed, and he was convicted in separate trials of touching two of the victims for lustful purposes. *Id.* During one of these trials, his victim, despite being instructed not to, made several references to what Baine had done to "us," apparently referencing the abuse suffered by other attendees of the center. *Id.* at 261. The defense repeatedly approached the bench to move for mistrial based upon the child's use of plural pronouns. *Id.* However, the trial court denied the motions and refused to admonish the jury on grounds that an admonition would simply call the jury's attention to the matter. *Id.* This Court affirmed, holding that the general

rule excluding evidence of other crimes to be inapplicable since Baine's actions toward these other children were "integrally related in time, place, and fact to the molestation of [the instant victim]." *Id.* at 262.

¶127. While acknowledging that "[t]he general rule in Mississippi is that in criminal trials, with certain exceptions, proof of other criminal conduct by the accused is inadmissible" *Id.* (quoting *Darby v. State*, 538 So.2d 1168, 1173 (Miss.1989)), in *Baine* this Court noted, "[p]roof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction." *Id.* The State, after all, has a legitimate interest in telling a rational and coherent story of what happened to the victim. *Id.* (citing *McFee v. State*, 511 So.2d at 136). *See also Neal v. State*, 451 So.2d 743, 759 (Miss. 1984) (upholding murder conviction despite trial testimony which revealed that defendant had contemporaneously killed or raped three other victims); *Turnage v. State*, 752 So.2d 1049, 1053 (Miss. Ct. App. 1999) (affirming despite testimony that defendant molested another child not included in the indictment because the abuse occurred simultaneously).

¶128. In the instant case, A.B. was allegedly abused in a bedroom by Dooley, King and Bates from the early spring through the fall of 2000, and H.G. was allegedly abused in a barn by Dooley around Christmas 2000. All of the abuse occurred at the same compound over the course of the spring, fall and winter of 2000. All of the abuse allegedly involved Dooley. The indictment charged Dooley with various crimes involving both minors albeit the charge involving Dooley and H.G. was severed.

¶129. The State argues that this error is harmless considering the overwhelming evidence of Dooley's guilt. We agree. There was ample evidence in this case for the jury to return a

verdict of guilty. Further, as discussed in more detail in the following issue, the trial court gave instruction 23, which is a limiting instruction that stated that the only purpose of the testimony from H.G. was to aid in determining the "truth and veracity" of Dooley's testimony and that the jury was prohibited from using H.G.'s testimony "in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty" of the charged crimes. Accordingly, the error, if any, is harmless. This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY REGARDING 404 (B) EVIDENCE.

¶130. Here, Dooley argues that the trial court erred in failing to give an appropriate limiting instruction regarding the testimony of H.G. and Melody Stewart. The necessity for such an instruction when M.R.E. 404(b) evidence is admitted, informing the jury of the limited purpose for which the evidence may be considered, has been plain in this State since this Court's decision in *Smith v. State*, 656 So. 2d 95 (Miss. 1995). In that case, this Court said that such a limiting instruction must be given if M.R.E. 404(b) evidence is to be introduced on the question of guilt, even if one is not requested by the defense, unless the aggrieved party specifically requests that one not be given. *Smith*, 656 So. 2d at 100. *Accord*, *Webster v. State*, 754 So. 2d 1232, 1240 (Miss. 2000). Dooley neither requested an instruction nor asked that one not be given. Thus, it was the responsibility of the trial court to sua sponte instruct the jury on the limited use of this evidence.

¶131. However, despite Dooley's allegations to the contrary, the record clearly shows that the jury was properly instructed on this point. Instruction 23 states as follows:

> The Court instructs the Jury that testimony of [H.G.] and Melody Stewart was offered for the limited purpose of determining the truth and veracity of the

46

defendant's, Nathan Paul King, testimony. You may give this testimony such weight and credibility as you deem proper under the circumstances for the limited purpose of determining the truth and veracity of the defendant, Nathan Paul King.

However, the Court further instructs the Jury that under laws of the State of Mississippi, you are not permitted and hereby instructed not to consider any testimony regarding and testimony of [H.G.] and Melody Stewart in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty of the charges of conspiracy to commit sexual battery, sexual battery (two counts) and contributing to the delinquency of a minor, said to have occurred on or before the 1st day of March, 2001, for which they are presently on trial.

The instruction tells the jury (1) that the only purpose of the testimony of H.G. and Stewart was to aid in determining the "truth and veracity" of Dooley's testimony; and (2) that the jury was prohibited from using the H.G. and Stewart testimony "in arriving at your decision as to whether or not David Earl King and Nathan Paul King are guilty" of the charged crimes. The jury is presumed to follow the instructions of the trial court. *Davis v. State*, 660 So.2d at 1253; *Walker v. State*, 671 So.2d at 618; *Collins v. State*, 594 So.2d at 35. Thus, this assignment lacks merit.

### III. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE JAIL NURSE, A STATE'S WITNESS, TO TESTIFY REGARDING AN ALLEGED RELATIONSHIP BETWEEN THE DEFENDANTS, NATHAN PAUL KING AND DAVID EARL KING, IN VIOLATION OF MRE 404 (B).

¶132. Melody Stewart, the on-site nurse at Marion-Walthall County Detention Center in Columbia, Mississippi, was called as a State's witness. Stewart initially testified during the State's case-in-chief, outside the presence of the jury, regarding an incident where Stewart walked into King's and Dooley's cell and found them lying in the same bunk. She testified that when King reluctantly stood up, he had an erection. The trial court sustained King's objection to this testimony.

¶133. However, during Dooley's direct-examination, he testified that *he had never engaged in any sexual act with King*. Thereafter, during its rebuttal case, the State recalled Stewart, who was allowed to give the same testimony that had previously been held inadmissible. She testified that she observed Dooley and King lying on their sides, together in the bottom bunk. King was facing the wall, and Dooley was facing King. When Stewart entered the cell, Dooley jumped up immediately, but King initially refused to get up, falsely claiming that another nurse had already come by. After fumbling with his crotch area, King finally did arise, and Stewart testified that he had a noticeable erection.

¶134. Dooley argues this evidence was improperly admitted in violation of M.R.E. 404(b). He argues that the evidence was not probative on the charges against him and that, consequently, it failed the M.R.E. 403 balancing test because of its highly prejudicial nature. Dooley also points out that Stewart testified that Dooley and King were not having sex. However, Dooley overlooks the fact that he had testified that *he had never engaged in any sexual act with King*. Stewart's testimony was probative on this point and thus a proper subject for rebuttal, as it belied Dooley's claim that he had never engaged in any sexual act with King.

¶135. Moreover, as discussed in the previous assignment, the jury was properly instructed on the use of this evidence. Accordingly, this assignment is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN SEALING THE JURY PANEL LIST IN THIS ACTION FROM DOOLEY.

¶136. In this assignment, Dooley argues that the trial court committed error by unilaterally sealing the jury list from both him and the State without any notice or opportunity for a

48

hearing. He also asserts error in the trial court's failure to allow a juror questionnaire and an individual voir dire of the jury panel.

¶137. The jury panel may be sealed under specified conditions. Miss. Code Ann. § 13-5-32 (Rev. 2002) provides as follows:

> The names of jurors drawn from the jury box shall be made available to the public unless the court determines in any instance that this information in the interest of justice should be kept confidential or its use limited in whole or in part.

¶138. In *Valentine v. State*, 396 So.2d 15, 17 (Miss. 1981), this Court expanded the requirements of § 13-5-32 by holding that, before sealing a venire list, the trial court must give notice and a hearing to the defendant. *Valentine*, 396 So. 2d at 17. Those guidelines were not followed in the case at bar. Instead, during a pretrial hearing, the trial court announced that it intended to seal the venire list because, "I don't want any improper contact with any proposed juror from anybody."

¶139. Interestingly, the Court in *Valentine* did not reverse based on the trial court's error in sealing the venire list. Moreover, Dooley has not cited to any case in which the appellate courts of this State have ever reversed a criminal case on these grounds, nor has he argued or demonstrated any prejudice resulting from this error. He simply argues that "the trial judge committed an error in sealing the members of the jury panel from the Appellant. *United States v. Clay*, 159 F. Supp. 2nd 1357 (M.D. Ala. 2001)."

¶140. As previously noted, *Clay* is distinguishable from the case at bar.[12] A substantial factor in *Clay* was the potential issue for race discrimination in the construction of venire lists.

---

[12] See Issue VIII of David Earl King, *supra*.

*United States v. Clay*, 159 F. Supp. 2d 1357 (M.D. Ala. 2001). The procedure at issue in *Clay* was held to be a violation of the Jury Selection and Service Act.[13] The trial judge's actions here did not create any such potential for race discrimination. Moreover, this case involves state, not federal law. Since *Clay* is distinguishable from the case at bar, and Dooley has cited no other authority, and has failed to show that sealing of the venire panel list prejudiced him in any way, this error does not form the basis for reversal.

¶141. This assignment is without merit.

> **V.     WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION NO. 21 BECAUSE THE INSTRUCTION MISSTATED THE LAW OF AIDING AND ABETTING.**

¶142. In his fifth issue, Dooley complains that the trial court erred in overruling his objection to Instruction Number 21, one of the aiding and abetting instructions. At trial, Dooley objected as follows:

> The defendant, Nathan Paul King, objects to Instructions 30 [sic] and 31 [sic] regarding the aiding and abetting, there being no evidence, in the record, that supports the granting of the instructions nor was he charged with the crime of aiding and abetting in any of the counts of the indictment.

On appeal, he argues that "[t]he basis of the objection was the incompleteness of the law of aiding and abetting and repetitive and disarranged nature of Instruction No. 21 in comparison to State's Instruction No. 20." However, as the record shows, Dooley's objection at trial did not consist of the same objections he makes here. Therefore, they are not properly before this Court. *Patterson v. State*, 594 So. 2d 606, 609 (Miss. 1992); *Barnett v. State*, 563 So. 2d

---

[13] 28 U.S.C. §§ 1863(a), 1863(b)(5).

1377, 1380 (Miss. 1990). Moreover, the law is clear that "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Doss v. State*, 709 So.2d 369, 378 (Miss. 1996) (quoting *Conner v. State*, 632 So.2d 1239, 1255 (Miss. 1993)).

¶143. Procedural bar notwithstanding, Dooley's objections, both at trial and here on appeal, are without merit. Instruction Number 20 states as follows:

> The Court instructs the Jury that every person who assists, aids or abets in the commission of a crime is equally as guilty as those who actually commit the crime. However, the Court further instructs you that before you can find a person guilty of aiding and abetting in the commission of a crime, you must find from the credible evidence, beyond a reasonable doubt, that such person or persons arranged for, counseled or commanded another to commit the crime of sexual battery. Mere presence by a person or persons at the scene of a crime or mere association with those who commit a crime is not enough to prove participation in it.

Instruction Number 21 states as follows:

> The Court instructs the Jury that aiding and abetting involves some participation in the criminal act and this may be evidenced by word, overt act or deed.

¶144. Our law is clear that one who aids and abets another in the commission of an offense is guilty as a principal. *Davis v. State*, 586 So.2d 817, 821 (Miss. 1991); *Malone v. State*, 486 So.2d at 363-64; *Shedd v. State*, 228 Miss. 381, 386-87, 87 So.2d 898, 900 (1956). Plainly, the evidence in the record of this case shows that Dooley and King aided and abetted each other in the commission of the crimes, and the instructions, if proper statements of the law, were therefore properly granted. *McCullum v. State*, 794 So. 2d 286, 289-90 (Miss. Ct. App. 2001).

¶145. As opposed to isolating one jury instruction, jury instructions are considered as a whole. *Malone v. State*, 486 So. 2d at 365. However, reversible error is present when the trial

51

court grants instructions of the State that are clearly erroneous. ***Duvall v. State***, 634 So.2d at 526. The United States Supreme Court has held that the failure to submit the essential elements of a crime to the jury via proper instructions is fundamental error. ***Screws v. United States***, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). However, the instructions at issue, read together, properly stated the law of aiding and abetting. *See*, *e.g.*, ***Simmons v. State***, 568 So. 2d 1192, 1203-04 (Miss. 1990); ***Davis v. State***, 586 So. 2d at 821.

¶146. What renders one an "aider and abetter" is well settled. In ***Crawford v. State***, 133 Miss. 147, 97 So. 534 (1923), this Court ruled that to aid and abet in the commission of a felony, one must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." 133 Miss. at 151. *See* ***Malone v. State***, 486 So. 2d at 363 (To "aid and abet" means that one must "do something that will incite, encourage, or assist the perpetrator in the commission of a crime."); ***Williams v. State***, 463 So.2d at 1066 ("One who aids and abets another is an accessory before the fact and is guilty as a principal"); ***Shedd v. State***, 228 Miss. at 386, 87 So.2d at 900 (Aiding and abetting involves a community of unlawful purposes at the time of the act and some participation in the act in furtherance thereof); ***Gibbs v. State***, 223 Miss. 1, 6, 77 So.2d 705, 707 (1955) (Aiding and abetting involves participation in the criminal act).

¶147. As long as the instructions given properly instruct the jury of the elements of the crime and are correct statements of law, then no reversal will be granted. ***Malone v. State***, 486 So.2d at 365. One who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony. So when considered in this manner, the

instruction properly advised the jury under the facts that, if it believed that Dooley and King formed a common design and purpose to sexually assault A.B. and that in pursuance of that common design Dooley did in fact so assault A.B., then Dooley is guilty as charged.

¶148.  This assignment is without merit.

### CONCLUSION

¶149.  Finding no reversible error as to either King or Dooley, we affirm the circuit court's judgment.

¶150.  **DAVID EARL KING: COUNT I: CONVICTION OF CONSPIRACY TO COMMIT SEXUAL BATTERY, AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $5,000, AFFIRMED.  COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $10,000, AFFIRMED.  COUNT III: CONVICTION OF CONTRIBUTING TO THE DELINQUENCY OF A MINOR AND SENTENCE OF ONE (1) YEAR IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $1,000, AFFIRMED.  THE SENTENCES IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY.**

**NATHAN PAUL KING a/k/a DOOLEY: COUNT I:  CONVICTION OF CONSPIRACY TO COMMIT SEXUAL BATTERY, AND SENTENCE OF TWO AND ONE-HALF (2 1/2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $5,000, AFFIRMED.  COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $10,000, AFFIRMED.  COUNT III: CONVICTION OF CONTRIBUTING TO THE DELINQUENCY OF A MINOR AND SENTENCE OF ONE (1) YEAR IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAY FINE OF $1,000, AFFIRMED.  THE SENTENCES IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR.  McRAE, P.J., CONCURS IN RESULT ONLY.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**