GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Michael Goldman was convicted of burglary of a dwelling (Count I), sexual battery (Count II), and aggravated assault (Count III). On appeal, Goldman argues that: (1) the jury instruction on Count III constructively amended the indictment, (2) the circuit court erred by refusing to allow the defendant to cross-examine the victim about her past sexual relationship with the defendant, (3) the victim’s medical records were improperly admitted, (4) the circuit court erred by meeting with the jury prior to sentencing, (5) he received ineffective assistance of counsel at trial, and (6) the cumulative errors taken together require that a new trial be granted. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Goldman was indicted on charges stemming from events during the late hours of May 29, 2003, and the early morning hours of May 30, 2003. Those events involved Emily,
 
 [1]
 
 the sixteen-year-old vic
 
 *396
 
 tim, and Goldman, who was eighteen years old at the time.
 

 ¶ 3. At trial, Emily and Goldman gave very different versions of what happened that night. According to Emily, she was spending the night at her mother’s house and was alone because her mother was working the night shift. She was awakened around 1:00 a.m. when she received a phone call from a male who asked if her mother was home. Emily replied that her mother was not home and hung up the phone. The phone rang a second time, and Emily heard the same male voice ask if her brother was home. She replied that he was not, hung up the phone, and went back to bed. Later, she heard noises and saw a shadow moving inside the home. She called 9-1-1 and was told to remain on the line. She saw someone holding a knife come toward her room and then disappear for a moment. The person came back toward her room with a blanket covering his face.
 

 ¶ 4. Emily began to scream and beg the intruder not to stab her with the knife. A struggle ensued and the man removed Emily’s pants and underwear. He tried to force her to perform oral sex, but she resisted his advances. He then began to have sexual intercourse with her, and the knife fell onto the bed. Emily grabbed the knife, but the man got it back. Emily was cut on the thigh and neck during the struggle. The police then kicked in the front door of the home, entered the bedroom, and restrained the man. At that point, Emily identified the man as Michael Goldman.
 

 ¶ 5. The police observed Goldman on top of Emily as they entered the bedroom. After Goldman jumped up from the bed, the police could see that his penis was erect and covered with discharge. The officers testified that Goldman said he was drunk and had “f* * *ed up.”
 

 ¶ 6. Goldman’s defense was that the intercourse was consensual. He claimed to have known Emily since he was fifteen years old and testified that they had spent time together at school and at church. On the night of May 29, 2003, Goldman claimed that he borrowed a friend’s cell phone to make a call. He noticed that there was a missed call from Emily. He decided to call her and ask if he could come over. He testified that she said “sure,” so he went down the street to her house. He knocked on the door several times, but no one answered. He went back to his house to call Emily again. She told him that she did not hear him knocking on her door. He went back down to her house, but again he got no response at the door. He became worried that something was wrong so he began to knock on the windows. He saw that one window was open and became worried that someone had broken into the house. He returned to his car and grabbed his cell phone and a knife. He climbed in the window and slowly moved through the house. When he got to Emily’s room, she began to scream and beg him not to stab her. Goldman tried to calm her down by telling her that it was him and not an intruder.
 

 ¶ 7. Goldman claims that Emily eventually calmed down and pulled him to her. He thought that she wanted to have intercourse and testified that she was not pushing him away or telling him to get off of her. Thereafter, the police entered the room and arrested Goldman.
 

 ¶ 8. The jury found Goldman guilty of all three counts: Count I, burglary of a dwelling in violation of Mississippi Code Annotated section 97-17-23 (Rev.2006); Count II, sexual battery in violation of Mississippi Code Annotated section 97-3-95 (Rev. 2006); and Count III, aggravated assault in violation of Mississippi Code Annotated
 
 *397
 
 section 97-3-7 (Rev.2006). Goldman was sentenced to a term of twenty-five years for Count I; thirty years for Count II, to run concurrently to the sentence in Count I; and twenty years for Count III, to run consecutively to the sentences in Counts I and II. Goldman filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict that was denied by the circuit court. From this judgment, Goldman appeals.
 

 ANALYSIS
 

 1. Whether the circuit couH erred by alloiving ■the jury instruction on Count III to constructively amend the indictment.
 

 ¶ 9. Goldman claims that the jury instruction given on Count III constructively amended his indictment and changed both the method of the assault and the necessity of proving any injury. Count III of the indictment charged that Goldman “did willfully, unlawfully, purposely and knowingly attempt to or cause serious bodily injuries to [Emily], a human being, by striking and choking her.... ” The jury instruction submitted instructed the jury to find Goldman guilty of aggravated assault if it found beyond a reasonable doubt that Goldman “did wilfully, unlawfully, knowingly and fe-loniously attempt to cause or in fact did cause bodily injury to [Emily], a human being, with a knife, a deadly weapon.... ” Goldman argues that the jury instruction was a substantive amendment of the indictment which could have only been made by a grand jury.
 

 ¶ 10. In response, the State argues that Goldman did not make a contemporaneous objection at trial. Because Goldman did not object to the difference in language used in the instruction and the indictment, he is procedurally barred from raising the instruction as error.
 
 Davis v. State,
 
 684 So.2d 643, 659 (Miss.1996). The State is correct, and the issue is procedurally barred. Notwithstanding the procedural bar, this issue is without merit.
 

 ¶ 11. An amendment to an indictment is permissible without a grand jury when the amendment is to form and not substance.
 
 Spann v. State,
 
 771 So.2d 883, 898(¶ 44) (Miss.2000) (citing
 
 Miller v. State,
 
 740 So.2d 858, 862(¶ 13) (Miss.1999)). In
 
 Spann,
 
 the supreme court stated:
 

 It is well settled in this state ... that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant’s case. The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made.
 

 Id.
 
 (citations omitted).
 

 ¶ 12. First, Goldman argues that the State did not prove that he caused serious bodily injury by striking and choking as the indictment states. He claims that the absence of this evidence provided him a defense to the charge in Count III which he was not afforded by the absence of the “striking and choking” language in the jury instruction. Second, he claims that the instruction allowed the jury to find him guilty if they found that he caused
 
 or attempted to cause
 
 bodily injury with a knife; thus, the jury was not required to find that he caused an actual injury to Emily. Third, the indictment stated that Goldman caused
 
 serious
 
 bodily injury; however, the instruction merely required bodily injury.
 

 ¶ 13. We do not find any of Goldman’s arguments persuasive. Contrary to his contention, there was evidence that he
 
 *398
 
 struck and choked Emily. Furthermore, both the indictment and the instruction included language of attempt; thus, it was never necessary for the State to prove an actual injury. Finally, the fact that the instruction did not require a finding of serious bodily injury did not prejudice Goldman’s case. Throughout the trial, his defense was that he did not cause or attempt to cause any . injury to Emily, whether serious or not.
 

 ¶ 14. The amendment to the indictment caused by the jury instruction did not materially alter Goldman’s defense or prejudice his case. His defense of consent was equally availablé after the jury was instructed. Therefore, this issue has no merit.
 

 2. Whether the circuit court erred by refusing to allow the defendant to cross-examine the victim about her past sexual relationship with the defendant.
 

 ¶ 15. Goldman argues that he should have been allowed to cross-examine Emily about her past sexual relationship with him. Because his defense was that the intercourse was consensual, Goldman claims that he should have been able to produce evidence from other witnesses to prove that he previously had sex with Emily. The State responds that the evidence was properly excluded by the circuit court.
 

 ¶ 16. We review the exclusion of evidence under an abuse of discretion standard of review.
 
 Wade v. State,
 
 583 So.2d 965, 967 (Miss.1991). Absent an abuse of discretion, the circuit court’s decision will not be disturbed on appeal.
 
 Porter v. State,
 
 869 So.2d 414, 417(¶ 8) (Miss.Ct.App. 2004) (citing
 
 McCoy v. State,
 
 820 So.2d 25, 31 (¶ 15) (Miss.Ct.App.2002)).
 

 ¶ 17. On the second day of trial, the State filed a motion to exclude evidence of the prior sexual behavior of the victim. The circuit judge granted the motion finding that: (1) Goldman did not follow the notice requirements of Mississippi Rule of Evidence 412(c); (2) the evidence was not relevant; and (3) even if relevant, the probative value of such evidence was substantially outweighed by the unfair prejudice. The circuit judge stated that evidence of prior sexual intercourse between Goldman and Emily would have been prejudicial and confusing to the jury by implying that “prior consent meant that this situation would have been consensual.”
 

 ¶ 18. We find no abuse of discretion on the part of the circuit judge. First, it is clear from the record before us that Goldman did not file written notice that he intended to offer evidence of the victim’s past sexual behavior within fifteen days before trial. Thus, the evidence was properly excluded because of Goldman’s failure to comply with Mississippi Rule of Evidence 412(c)(1). Second, it was proper to exclude the evidence because the circuit judge determined it was irrelevant and prejudicial. As we have held before regarding the defense of consent, “[a]ll that was relevant regarding sexual relations at this trial was whether the victim consented to the shocking abuses visited upon him on [the day in question].”
 
 Fuqua v. State,
 
 938 So.2d 277, 283(¶18) (Miss.Ct.App.2006).
 

 ¶ 19. There was evidence, in the form of Emily’s testimony and the 9-1-1 tape, to show that there was no consent on the day in question. Evidence of a prior sexual relationship was not relevant as to whether Emily consented that day, especially considering that the evidence showed Goldman broke into Emily’s house during the night and entered her bedroom with a large knife in his hand. As there was no abuse of discretion regarding the exclusion of this evidence, this issue has no merit.
 

 
 *399
 

 3. Whether the victim’s medical records were properly admitted into evidence.
 

 ¶ 20. Goldman contends that the circuit court erred by allowing the State to introduce Emily’s medical records into evidence. At trial, the State called University Medical Center nurse Cheryl Flynt who read Emily’s account of the incident contained in Emily’s medical records. The records were then entered into evidence under Mississippi Rule of Evidence 803(4) as a statement for the purposes of medical diagnosis or treatment. Goldman argues that the statement was introduced for the sole purpose of giving the jury a prior consistent statement of the victim and should not have been admitted as substantive evidence. The State responds that Goldman waived this issue because he did not object to the medical records on the grounds that he now argues, and the issue was not raised in his motion for new trial.
 

 ¶ 21. “An objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error.”
 
 Ross v. State,
 
 954 So.2d 968, 987(1127) (Miss.2007). “Furthermore, when a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds.”
 
 Copeland v. Copeland,
 
 904 So.2d 1066, 1073(¶ 24) (Miss.2004) (citing
 
 Burns. v. State,
 
 729 So.2d 203, 219(¶ 67) (Miss.1998)).
 

 ¶ 22. After the State asked that the medical records be entered into evidence, Goldman made the following objection:
 

 [Attorney for the State]: Your Honor, at this time, we would ask for that narrative to be entered into evidence.
 

 The Court: Any objection?
 

 [Attorney for Goldman]: Your Honor, I would just object because she has not been qualified as SANE [Sexual Assault Nurse Examiner] expert or nurse in this matter.
 

 ¶23. Clearly, Goldman made no objection that the medical records were a prior consistent statement of the victim. “The rule requiring specific objections is necessary because to permit litigants to hold back objections until on appeal would mean that costly new trials would be had where valid objections could have been sustained during the trial.”
 
 Stringer v. State,
 
 279 So.2d 156,158 (Miss.1973) (quoting
 
 Boring v. State,
 
 253 So.2d 251, 253 (Miss.1971)). Here, Goldman made a specific objection at trial, and his objection was wholly unrelated to his argument on appeal. Therefore, this issue has been waived.
 

 ¶ 24. Despite the procedural waiver, we find that any error in the admission of the nurse’s statement was harmless error. The supreme court has held that:
 

 The basic test for harmless error in the federal constitutional realm ... is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained .... [T]he inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.
 

 Thomas v. State,
 
 711 So.2d 867, 872-73(1125) (Miss.1998) (internal citations and quotations omitted). The circuit judge allowed the medical records to be entered under Mississippi Rule of Evidence 803(4) which excludes from the hearsay rule statements made for purposes of medical diagnosis or treatment. The rule allows statements describing “the inception or general character of the cause or external source” of a victim’s present symptoms. M.R.E. 803(4). The portions of the state
 
 *400
 
 ment describing the penetration and the knife scratches on Emily’s body qualify as statements made for the purposes of medical treatment. The remainder of the statement containing Emily’s account of what happened that night should not have been admitted under M.R.E. 803(4); however, we find that this error was harmless when compared to all of the other evidence considered by the jury.
 

 ¶ 25. In the statement read into evidence by the nurse, Emily describes what time she went to bed, the phone calls from a male asking whether her mother and brother were at home, and the shadow she saw moving through the house. She told the nurse that she called 9-1-1 and had the phone next to her and that she saw a black male walking toward her bedroom with a knife. She said that she recognized the man to be Goldman. He held the knife to her throat, pushed her onto the bed, and pulled off her shorts and underwear as well as his pants. He tried to have her perform oral sex, but she refused. She was screaming the entire time and was still on the line with the 9-1-1 operator. The police kicked in the door and apprehended Goldman.
 

 ¶ 26. The admission of the statement was harmless when compared to the overwhelming evidence of guilt contained elsewhere in the record. Goldman never disputed that he broke into Emily’s home while carrying a knife or that he had intercourse with Emily. His defense was that the intercourse was consensual. Emily testified at trial as to all the facts contained in the nurse’s statement. The jury also listened to the 9-1-1 recording. They heard Emily repeatedly scream “please don’t stab me” as Goldman entered her bedroom and heard the struggle that ensued between Goldman and Emily. Further, one of the police officers testified that Emily was shaking and crying when they entered the bedroom. Even without the nurse’s statement, there is overwhelming evidence that the intercourse was not consensual in the form of Emily’s testimony, the 9-1-1 recording, and the cuts and scratches on Emily’s body from Goldman’s knife. Thus, the admission of the statement was harmless error and does not require reversal of Goldman’s conviction. Accordingly, this issue is without merit.
 

 Jp. Whether the circuit court erred by meeting with the jury prior to sentencing.
 

 ¶ 27. Goldman argues that he was prejudiced when the circuit judge visited with the jury after the verdict was returned, but before sentencing. Specifically, he says that the circuit judge’s visit with the jury, outside the presence of the defendant, had the danger of exposing the circuit judge to information or sentiments that the defendant could not rebut. The State responds that this issue is procedurally barred because Goldman made no objection and did not address the issue in his motion for a new trial. Further, the State claims Goldman fails to show how he was prejudiced by this occurrence.
 

 ¶ 28. After the jury returned its guilty verdicts on all counts and was individually polled, the circuit judge announced the following:
 

 The Court: We’re going to stand in recess for a minute. Defendant remain in custody. After I visit with the jury, I’m going to come back and impose sentence.
 

 After the court was in recess, the circuit judge returned, heai'd argument from the attorneys, and pronounced Goldman’s sentence.
 

 ¶ 29. There is nothing in the record that indicates what the “visit” with the jury entailed. Goldman claims the meeting undermined the fairness of his sentenc
 
 *401
 
 ing proceeding. Goldman cites
 
 Edwards v. State,
 
 615 So.2d 590, 598 (Miss.1993) for the proposition that he has the right to review information used in determining his sentence. He claims that he was, therefore, entitled to know what was said during the circuit judge’s meeting with the jury, so he could respond accordingly.
 

 ¶ 30. As the State contends, this issue is also procedurally barred. The record shows that Goldman did not contemporaneously object to the circuit judge’s comment that he would be visiting with the jury. “It is axiomatic that a litigant is required to make a timely objection.... [I]f no contemporaneous objection is made, the error, if any, is waived.”
 
 Smith v. State,
 
 797 So.2d 854, 856(¶ 7) (Miss.2001). Neither was this issue raised in the hearing on Goldman’s motion for a new trial. On appeal, we will not decide issues “which were not presented to the trial court and that court given an opportunity to rule on them.”
 
 Stringer,
 
 279 So.2d at 158 (citations omitted). Had the issue been raised before the circuit judge, we might have some basis to determine whether the meeting with the jury was in error; however, by waiting until this appeal, Goldman has waived the opportunity to claim such error, if any.
 

 ¶ 31. Furthermore, Goldman has not shown how the fairness of his sentencing was affected in any way or how he was prejudiced by the meeting. There is nothing in the record that indicates the circuit judge discussed the merits of the case with the jury. In fact, the record indicates exactly the opposite as the circuit judge stated the following during the sentencing phase: “And again, I don’t know what the jury’s thoughts were in that process or whether they picked up on that.” Goldman alleges no specific example of prejudice, and he has not shown that the circuit judge had any information from the jury other than the verdict announced at the conclusion of the trial. Accordingly, this issue is without merit.
 

 5. Whether Goldman received ineffective assistance of counsel at trial.
 

 ¶ 32. Goldman further argues that his trial counsel rendered ineffective assistance. To support this claim, Goldman asserts that trial counsel failed to: (1) object to the constructive amendment of the indictment and (2) give proper notice as to allow Goldman to put on evidence of a prior sexual relationship with Emily. The State argues that Goldman has not met the necessary requirements for proving that his counsel was ineffective.
 

 ¶ 33. To prove ineffective assistance of counsel, a defendant must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with the defendant to establish both prongs.
 
 McQuarier v. State,
 
 574 So.2d 685, 687 (Miss.1990). Under
 
 Strickland,
 
 there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Id.
 
 at 694, 104 S.Ct. 2052.
 

 1134. Goldman establishes that his trial counsel did not object on the grounds of a constructive amendment to the indictment and also that counsel did not meet the notice requirements of Rule 412(c) of the Mississippi Rules of Evidence necessary to introduce evidence of the victim’s prior sexual relationship with the defendant. Even if we assume that this rises to the
 
 *402
 
 level of deficient representation under the first prong of
 
 Strickland,
 
 Goldman fails to meet the second prong of
 
 Strickland
 
 because he has not shown that the jury’s verdict would have been different, but for these errors. In fact, we found both of these assignments of error to be without merit regardless of the procedural bar imposed because of trial counsel’s allegedly deficient representation. Goldman has failed to meet the
 
 Strickland
 
 test to prove ineffective assistance of counsel; therefore, this argument is without merit.
 

 6. Whether the cumulative errors taken together require that a neiv trial be granted.
 

 ¶ 35. Lastly, Goldman argues that even if no single error requires reversal of his case, this Court should nonetheless consider granting a new trial based on the cumulative effect of all the errors. However, we have found all of Goldman’s assignments of error to be without merit. “As there was no reversible error in any part, so there is no reversible error to the whole.”
 
 McFee v. State,
 
 511 So.2d 130, 136 (Miss.1987). Accordingly, this issue is also without merit.
 

 ¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY YEARS TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I; AND COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I AND II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The name of the victim has been changed to "Emily” in this opinion to protect her identity-