ROBERTS, J.,
for the Court:
¶ 1. Alfred Kirkham and Lawonda She-phard were simultaneously tried for aggravated assault before a jury in the Bolivar County Circuit Court. The jury found them both guilty, but Shephard was convicted as an aider and abettor. Kirkham was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). Shephard was sentenced to fifteen years in the custody of the MDOC with five years suspended. Aggrieved, Kirkham and Shephard appeal. Kirkham argues that the circuit judge erroneously prohibited testimony regarding the reputation of the victim. Kirkham also argues that the cumulative effect of the circuit judge’s comments prejudiced his right to a fair trial. Finding no error as to Kirkham, we affirm. Shephard argues that the circuit judge erred when it denied her motion to sever her trial from Kirk-ham’s after Kirkham, her co-defendant, unexpectedly implicated her. After careful consideration, we find Shephard’s argument with merit. Accordingly, we reverse the circuit judge’s judgment regarding Shephard and remand Shephard’s case for a new trial.
FACTS AND PROCEDURAL HISTORY
¶ 2. The events that led to Kirkham’s and Shephard’s convictions for aggravated *689 assault took place during June 2007 in Shaw, Mississippi. The catalyst for their convictions was a dispute between Kirk-ham and Fabian Curry regarding damages to Curry’s car. In March 2007, Kirkham’s brother was responsible for some collision damage to Curry’s car. Curry insisted that Kirkham pay $3,500 for the damage. Kirkham felt as though he should not be required to pay for the damages that his brother caused. Even so, Kirkham tried to arrange for his father to pay for the damage to Curry’s car. When he had not received any money from Kirkham’s father, Curry again demanded that Kirkham pay for the damage to his car. Kirkham adamantly refused. On Sunday, June 24, 2007, there was an altercation between Kirkham and Curry. Kirkham testified that Curry shoved him against a wall and demanded that Kirkham pay for the damage to his car. Kirkham also testified that he left on his motorcycle, and Curry ran him off the road.
¶ 3. It is undisputed that, the next day, Kirkham shot Curry in the chest. Curry survived. Curry and Kirkham described two distinctly different versions of events. According to Curry, he was visiting a friend at the Promise Land Apartments. Curry testified that he left his friend’s apartment to go to a store. Curry went on to testify that he saw Shephard outside and heard Kirkham’s motorcycle. In Curry’s version of events, their confrontation became more heated, and Shephard handed Kirkham a pistol that she had gotten out of Kirkham’s nearby car. Curry testified that Kirkham shot him once in the chest. Curry further testified that Kirk-ham tried to shoot him again, but Kirk-ham’s .38-caliber derringer pistol misfired. Curry’s friends arrived shortly afterward and took Curry to the hospital.
¶ 4. Shephard, who was Kirkham’s girlfriend at the time Kirkham shot Curry, testified that Curry and three of Curry’s friends confronted Kirkham. According to Shephard, Curry punched Kirkham in the face. When Shephard tried to intervene, Curry threatened her too. Shephard testified that Curry implied that he and his friends would arm themselves with pistols. Shephard went on to testify that her aunt attempted to intervene, and during the commotion, she heard a shot and saw Curry on the ground. Shephard testified that she did not give Kirkham a pistol. She also testified that there was not a pistol in Kirkham’s car, which she had been driving.
¶ 5. Kirkham testified in his own defense. His version of events was similar to Shephard’s. Like Shephard, Kirkham testified that Curry punched him in the face and “dashed” beer on him. Kirkham consistently maintained that Curry was the aggressor and that Curry was supported by three of his friends. Kirkham also testified that immediately before he shot Curry, Curry acted as though he was retrieving a weapon from his pants. According to Kirkham, he shot Curry in necessary self-defense.
¶ 6. Kirkham gave a sworn statement to officers with the Shaw Police Department. In that statement, Kirkham did not state that Shephard handed him a pistol. Instead, he said that he “came up with the gun.” However, at trial, he testified, for the first time, that he asked Shephard to hand him a pistol. He also testified that she complied. According to Kirkham, he did not know who owned that particular pistol, but he was aware that Shephard owned one.
¶ 7. Kirkham was indicted for aggravated assault. Shephard was indicted as an accessory-before-the-fact for aiding and abetting in the aggravated assault. Kirk-ham and Shephard were tried together. Ultimately, the jury found both Kirkham *690 and Shephard guilty. The circuit judge sentenced Shephard to fifteen years in the custody of the MDOC with five years suspended. Kirkham, who had previously been convicted of possession of cocaine with intent to distribute, was sentenced to twenty years in the custody of the MDOC. Aggrieved, Kirkham and Shephard appeal.
ANALYSIS
KIRKHAM’S ISSUES ON APPEAL
I. COMMENTS BY THE CIRCUIT JUDGE
¶ 8. Kirkham claims that the circuit judge made numerous inappropriate comments throughout the entirety of the trial. Kirkham did not object to any of the comments he mentions. However, in his motion for a new trial, Kirkham argued that the cumulative effect of what Kirkham considers to be the circuit judge’s attempts at levity eroded the seriousness of the proceedings and, in the aggregate, result in reversible error.
¶ 9. According to Kirkham:
Beginning in the [circuit court’s] voir dire and continuing throughout the proceedings, the [circuit] court induced laughter from the courtroom. During the [circuit] court’s voir dire, there was laughter reported in the record [on] ten instances. Although a cold record does not explain the basis for the jocularity, some instances were clearly a response to the [circuit court’s] comments. For instance, when a juror answer[ed] “sometimes” to the [circuit court’s] inquiry of whether [the juror was a] friend [of] one of the lawyers, or went to the lawyer’s home, the [circuit] court jested[,] “[a]re you sometimes personal friend or sometimes go to the home? I’m not sure.”
The record indicates that people in the courtroom laughed at the circuit judge’s comment. Additionally, Kirkham points out that there was laughter in the courtroom when, during voir dire, the circuit judge “remarked, apparently to his clerk, that vernacular terminology had changed since his youth.” Kirkham further draws attention to an instance in which, according to Kirkham, a juror “had difficulty expressing whether his knowledge of the witnesses would affect him.” After the prospective juror had attempted to indicate that he was not a friend of any of the parties involved in Kirkham’s trial, the circuit judge said, “[y]ou are not friends with anybody?” Again, the record indicates that there was laughter in the courtroom.
¶ 10. Kirkham also notes that, during the prosecution’s voir dire, the circuit judge drew laughter from the courtroom when he stated, “Bill went to high school with us, too. Didn’t he Tresa?” Furthermore, Kirkham’s attorney asked the jury panel, during voir dire, whether any members of the panel owned a weapon for personal protection. The circuit judge again made people in the courtroom laugh when he made a statement regarding members of the panel having weapons with them at that time.
¶ 11. This is not the first time that such a claim has been raised against the circuit judge who presided over Kirkham’s trial. In McKinney v. State, 26 So.3d 1065, 1071-72 (¶ 31) (Miss.Ct.App.2009), this Court considered a claim that the same circuit judge made numerous comments that, in the aggregate, denied a defendant “a fair trial because the jury was induced to treat the matter lightly.” This Court noted the following cautionary language by the Mississippi Supreme Court:
Jocularity and humor, by a court, should not be indulged in when a man’s liberty is at stake. The officers of a court, and especially the judge, district attorney *691 and sheriff, because of the attributes of the offices they hold, unconsciously exert tremendous influence in the trial of a case, and they should be astutely careful so that unintentionally the jurors are not improperly influenced by their words and actions.
Id. at 1072 (¶ 32) (quoting Roberson v. State, 185 So.2d 667, 670 (Miss.1966)). “The great danger, particularly in a criminal case, is that the weight and dignity of the court accompany each question or comment, although not so intended by the judge.” Id. (quoting Thompson v. State, 468 So.2d 852, 854 (Miss.1985)).
¶ 12. It is clear that some of the circuit judge’s comments were not only unnecessary, but also unnecessary attempts at levity. However, we cannot conclude that the cumulative or aggregate effect of the circuit judge’s comments eroded Kirkham’s right to a fair trial. As in McKinney we can find no instance in which the circuit judge “made light of the proceedings or joked at the defendant’s expense.” McKinney, 26 So.3d at 1072 (¶ 33). Be that as it may, we caution circuit judges to be aware of the supreme court’s instructions to avoid jocularity and humor to mitigate not only the possibility of unintentionally causing reversible error, but also the possibility of unintentionally creating an atmosphere of levity where one clearly does not belong.
¶ 13. Kirkham does not focus solely on comments that he considers to be attempts at humor. Kirkham notes that, during voir dire, the circuit judge had explained to the jury panel that “if I call one of them by [his or her] first name, I’m not trying to show lack of respect. They are friends. We work together. And so we know each other in this arena. And these are good attorneys and very respectful.” According to Kirkham, “there was one attorney present who was not from that circuit[;] the attorney for ... Kirkham. Thus, the [circuit] judge singled out the prosecutor and [Shephard’s] defense counsel and named them as friends and good attorneys.” Kirkham also draws attention to a comment that occurred during defense counsel’s cross-examination in which the circuit judge stated to defense counsel, “Don’t confuse things, lawyer.” According to Kirkham, the message to the jury was that defense counsel was attempting to confuse them. However, there was no contemporaneous objections to either of the circuit judge’s comments. Accordingly, any issue regarding those comments is proeedurally barred.
¶ 14. At one point during the trial, Curry and Kirkham were asked to stand beside one another so the jury could see the relative size difference between them. Kirkham notes that the circuit judge stated, “don’t get ‘em too close together.” Kirkham further notes that the record indicates that there was laughter from unspecified people in the courtroom. Again, this issue is proeedurally barred based on the lack of a contemporaneous objection. Procedural bar notwithstanding, given the facts and circumstances of this case, we cannot conclude that the circuit judge was attempting to make light of the situation at that time. The circuit judge’s comment did not imply that either Kirkham or Curry was more likely to attack the other. It was not unreasonable for the circuit judge to mitigate the possibility of a violent altercation by requiring that there be some distance between Kirkham and Curry.
¶ 15. Finally, Kirkham notes that, while cross-examining a defense witness who had testified that Kirkham’s ankle was bruised, the prosecution asked whether such injuries could have been sustained by kicking someone. The circuit judge instructed the prosecution to move forward with its cross-examination because the *692 prosecution “got enough evidence to— there’s no need in asking her about that.” According to Kirkham, the circuit judge’s comment “could only be construed by the jury as the judge’s’s judgement [sic] that the State had proved it’s [sic] ease [and] that no more evidence was required to convict [Kirkham].” However, there was no contemporaneous objection that the circuit judge’s comment was a comment on the weight or sufficiency of the evidence. Accordingly, any such claim raised for the first time on appeal is procedurally barred.
¶ 16. “The very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury.” Davis v. State, 811 So.2d 346, 353 (¶ 14) (Miss.Ct.App.2001) (quoting Hannah v. State, 336 So.2d 1317, 1321 (Miss.1976)). “Jurors are most susceptible to the influence of the judge; he cannot be too careful and guarded in his language and conduct in the presence of the jury.” Beyersdoffer v. State, 520 So.2d 1364, 1366 (Miss.1988). Viewing all of the comments that Kirkham raises, we cannot find that, in the aggregate, the cii’cuit judge’s comments clearly prejudiced Kirkham’s right to a fair trial. Accordingly, we find no merit to this issue.
II. CHARACTER EVIDENCE
¶ 17. Kirkham claims the circuit judge erred when it prohibited him from testifying regarding Curry’s reputation for violence. During Kirkham’s testimony on direct examination, Kirkham’s attorney asked, “were you at this time familiar with Mr. Curry’s reputation in the community for peacefulness!?]” The prosecution objected and stated, “He’s not for character, your Honor, when he’s also a fact witness. And I would object to that. I don’t think that that is permitted by the rules of evidence.” During a bench conference, the circuit judge asked Kirkham’s attorney whether he was “trying to say [Curry] has ... a reputation for violence.” Kirkham’s attorney answered affirmatively and mentioned that the testimony he sought to elicit was regarding Kirkham’s “state of mind.”
¶ 18. In response, the prosecution argued that Kirkham’s state of mind “has already been presented and has to be known to him not so much the community. He’s the one that acted.” The circuit judge agreed with the prosecution and added that Kirkham’s attorney had “already brought out that they’ve got — their argument about this thing.” We interpret the circuit judge’s statement to mean that evidence regarding a dispute between Kirkham and Curry had already been presented in evidence. The circuit judge went on to state that “it’s a [Mississippi Rule of Evidence] 403 problem for you.” The circuit judge never expressly ruled on the prosecution’s objection, but the context of the bench conference indicates that the circuit judge would not permit Kirkham’s attorney to elicit any evidence of Cuny’s reputation for violence in the community.
¶ 19. The relevance and admission or exclusion of evidence is a matter of the circuit judge’s discretion which will be reversed only for an abuse of that discretion which results in prejudice to a party. Shearer v. State, 423 So.2d 824, 826 (Miss. 1982). Pursuant to Mississippi Rule of Evidence 404(a), “[ejvidence of a person’s character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion.” Nevertheless, evidence that would otherwise be excluded under Rule 404(a) is admissible if it is “[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecu *693 tion to rebut evidence that the victim was the first aggressor[.]” M.R.E. 404(a)(2).
¶ 20. This Court has held that:
when the defendant claims to have acted preemptively to protect himself from a feared by yet-unrealized attack, the defendant’s knowledge concerning the victim’s character for aggressive behavior may be relevant to permit the jury to assess the reasonableness of the defendant’s response to what might otherwise appear as an overreaction against the victim.
Sheffield v. State, 844 So.2d 519, 522 (¶ 6) (Miss.Ct.App.2003). However, the defendant in Sheffield, “made no proffer as to what the particulars of Sheffield’s testimony might have been had he been allowed to continue.” Id. Similarly, there was no proffer of what Kirkham’s testimony might have been had Kirkham been allowed to continue. The record is simply silent on whether Kirkham knew, at the time of the shooting, Curry’s reputation for peacefulness or violence in the community and, if so, whether it was good or bad.
¶ 21. Regarding the proper predicate to such testimony, this Court has held as follows:
it is essential that the proper predicate be laid for the admissibility of evidence of the victim’s propensity for violence, i.e., that the defendant was actually aware of the victim’s character so that this prior knowledge colored the defendant’s decision regarding the necessity of violent physical effort to avoid an anticipated attack. This is so because of the obvious proposition that, if the defendant was not actually aware of the victim’s reputation for violent behavior, there was no reasoned basis to utilize force that, in the ordinary circumstance, would appear excessive and unjustified.
Id. Mississippi Rule of Evidence 103(a)(2) states that; “[E]rror may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and .... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.” Based on the lack of a proffer in the record, we cannot conclude that the circuit judge abused its discretion. Id. Accordingly, we find no merit to this issue.
SHEPHARD’S ISSUES ON APPEAL
I. SEVERANCE
¶ 22. Shephard did not file a pretrial motion to sever her trial from Kirkham’s because Kirkham’s pretrial statement did not implicate Shephard. Instead, Kirk-ham’s pretrial statement indicated that he, not Shephard, “came up with the gun” when Kirkham shot Curry.
¶ 23. At trial, Curry testified that She-phard handed Kirkham the pistol before Kirkham shot Curry. After the prosecution rested its case-in-chief, Kirkham opted to testify. Unlike his pretrial statement, Kirkham implicated Shephard during his direct testimony. Specifically, Kirkham testified that he told Shephard to “pass [him] the gun.” Kirkham also testified that Shephard complied.
¶ 24. Immediately after Kirkham’s unanticipated testimony, Shephard’s attorney moved to sever Shephard’s trial from Kirk-ham’s. The circuit judge overruled She-phard’s motion on the basis the Kirkham’s testimony was consistent with Curry’s. Shephard argues that the circuit judge erred.
¶ 25. According to the State, this issue is procedurally barred because Shephard did not raise this issue in her motion for a new trial. As authority for its argument that one who had unsuccessfully moved for a severance during a trial must *694 then raise that issue again in a motion for a new trial, the State cites Goldman v. State, 9 So.3d 394, 399 (¶¶ 20-23) (Miss.Ct.App.2008). Nevertheless, that portion of Goldman pertains to an issue regarding whether a circuit judge erred when it allowed the prosecution in that case to submit a victim’s medical records into evidence. This Court held that the issue was procedurally barred because “Goldman made a specific objection at trial, and his objection was wholly unrelated to his argument on appeal.” Id. at (¶ 23). Failure to raise the issue in a motion for new trial was not mentioned. Accordingly, the State has submitted no relevant authority for its argument that one who unsuccessfully moved for a severance during trial must raise that issue again in a motion for new trial or the issue is procedurally barred on appeal. It follows that the State’s argument is, itself, barred on appeal for failure to cite relevant authority.
¶ 26. A circuit judge’s decision to deny a motion to sever a trial will not be overturned unless the circuit judge abused its discretion. King v. State, 857 So.2d 702, 716 (¶ 19) (Miss.2003). “Defendants who are jointly indicted for a felony are not entitled to separate trials as a matter of right.” Miller v. State, 17 So.3d 1109, 1112 (¶ 11) (Miss.Ct.App.2009) (citation omitted). The circuit judge may grant a motion to sever upon a determination that a severance “is necessary to promote a fair determination of a co-defendant’s guilt or innocence.” Id. (citation omitted).
¶ 27. As set forth by Rule 9.03(2) of the Mississippi Uniform Rules of Circuit and County Court, “[t]he court may, on motion of the state or defendant, grant a severance of offenses ... [i]f during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant’s guilt or innocence of each offense.” “When the evidence at trial goes equally to the guilt of both defendants, and not to one more than the other, it is not error to try the defendants jointly.” King, 857 So.2d at 716 (¶ 19). The Mississippi Supreme Court has held:
[T]o warrant reversal ... [an appellant] must demonstrate that (1) [a co-defendant] attempted to exculpate himself at the expense of [the appellant], i.e., there was a conflict of interest between the two; and (2) that the balance of the evidence introduced at trial went more to the guilty [sic] of [a co-defendant] than to the guilt of [the appellant], such that the jury may have found [the appellant] guilty by association.
Id. at (¶ 20).
¶ 28. Kirkham’s testimony tended to exculpate himself at Shephard’s expense in that, by testifying that Shephard handed him the pistol, Kirkham avoided the appearance of having brought the pistol with him for a confrontation with Curry. In other words, Kirkham’s testimony avoided the appearance that he was the initial aggressor in the confrontation or that he left the confrontation, armed himself, and returned to the confrontation. If Kirkham anticipated a confrontation with Curry, armed himself in advance of that confrontation, and returned to the confrontation armed, he may well have forfeited any claim of necessary self-defense. See, e.g., Griffin v. State, 495 So.2d 1352, 1354 (Miss.1986).
¶ 29. As for the second part of the supreme court’s severance test, the balance of evidence certainly went more toward Kirkham’s guilt than it did toward Shephard’s guilt. Aside from Curry’s testimony that Shephard handed Kirkham the pistol, the prosecution presented no other evidence that Shephard was involved in an aggravated assault. Kirkham corroborated Curry’s version of events, but in doing so, he made his claim of self-defense more *695 viable. The only evidence regarding She-phard’s involvement in an aggravated assault was that Shephard handed Kirkham a pistol. Other than Curry’s testimony and Kirkham’s unexpected testimony that was inconsistent with his statement, there was no evidence that Shephard behaved in any criminal manner. In summary, the jury certainly may have found Shephard guilty by association with Kirkham.
¶ 30. Having found that Shephard has demonstrated both parts of the supreme court’s two-part test, we find that the circuit judge erred when it denied Shephard’s motion for severance. We, therefore, reverse the judgment of the circuit judge as to Shephard only and remand this matter for a new trial consistent with this opinion. Because we find merit to this issue, She-phard’s remaining issues are rendered moot.
¶ 81. KIRKHAM: THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SHEPHARD: THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS REVERSED, AND SHEPHARD’S CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.